[L. A. No. 1139. Department Two.—June 14, 1902.]

In the Matter of the Estate of HENRY MOTZ, Deceased. MICHAEL MOTZ, Appellant, v. KATIE MOTZ, Respondent.

CONTEST OF WILL—BURDEN OF PROOF UPON CONTESTANT.—Upon the contest of a will, the burden is upon the contestant to prove the allegations of undue influence and unsoundness of mind.

ID.—VERDICT FOR CONTESTANT—ORDER GRANTING NEW TRIAL—DISCRETION—APPEAL.—Where the evidence was conflicting, and the judge of the trial court was satisfied that the verdict of the jury, rendered for the contestant, was contrary to the weight of the evidence, it was his duty to grant a new trial; and the motion for a new trial being addressed to his sound legal discretion, his order granting it will not be disturbed upon appeal, where no manifest abuse of discretion appears.

ID.—EXECUTION OF WILL—CONFLICTING EVIDENCE — WEIGHT AGAINST CONTESTANT.—Where one of the subscribing witnesses to a will testified that he wrote the will, and that after it was signed by the testator both the subscribing witnesses signed it as such, at his request, while the other subscribing witness testified for the contestant that it was not signed by the testator when he subscribed his name thereto as a witness, but the latter was contradicted by declarations made by him to the contrary, the trial court was justified in believing that the weight of the evidence of the execution of the will was against the contestant.

ID.—SCRUTINY OF EVIDENCE OF SUBSCRIBING WITNESS—ATTACK UPON EXECUTION.—When a witness who has solemnly subscribed his name

to a will as an attesting witness, knowing the nature of his act, and that the deceased testator would rely upon his name as a part of the execution of the will, undertakes by his evidence to overthrow or cast suspicion upon it, his evidence should be closely scrutinized.

ID.—SPECIFICATIONS OF INSUFFICIENCY OF EVIDENCE.—Where the specifications of insufficiency of the evidence fairly notified the opposite party of the grounds of contention of the moving party, that the evidence was insufficient to justify the verdict, and the transcript contains all of the evidence, the court ought not to refuse to consider the question of the insufficiency of the evidence upon appeal from an order granting a new trial.

ID.—FEEBLE CONDITION OF TESTATOR—SOUNDNESS OF MIND.—Although the testator was feeble in health, suffering under disease, and aged and infirm, yet if he was of sufficiently sound mind to be capable of understanding the nature and situation of his property, and of disposing thereof intelligently, without any delusion affecting his action, he had sufficient capacity to make a will.

ID.—UNDUE INFLUENCE—FREE AGENCY.—The kind of undue influence that will destroy the instrument must be such as in effect destroyed the testator's free agency and overpowered his volition at the time of the making of the will.

ID.—QUARRELS WITH WIFE MADE DEVISEE.—A will cannot be set aside merely because of proof of quarrels between the testator and his wife, who was made the object of his bounty.

APPEAL from an order of the Superior Court of San Luis Obispo County denying a new trial. E. P. Unangst, Judge.

The facts are stated in the opinion.

William Shipsey, and F. A. Dorn, for Appellant.

Albert Nelson, and W. H. Spencer, for Respondent.

COOPER, C.—Henry Motz died in July, 1900, leaving by will his property to his wife, who is the proponent of the will and respondent here. The appellant, who is a brother of deceased, filed a contest in which he alleged that the will was not properly executed, and that at the time of its purported execution deceased was acting under fraud and undue influence, and was not of sound and disposing mind. The respondent denied the allegations, a jury was impaneled to try the issues so raised, and returned a verdict in favor of appellant on each material issue. Findings were filed, adopting

the special findings of the jury, and a judgment accordingly entered denying the probate of the will.

The court, on motion of respondent, granted a new trial, and this appeal is from said order. The grounds upon which the new trial was granted are not stated in the order, but we infer from the briefs that it was granted upon the insufficiency of the evidence to support the findings of the jury. It is well settled in this state that, though the evidence is conflicting, if the judge of the trial court is satisfied that the verdict is contrary to the weight of the evidence, it is his duty to grant a new trial, and that the motion in such case is addressed to the sound legal discretion of the court, and will be upheld here, unless it appears that there was a manifest abuse of such discretion. (*Bjorman* v. *Fort Bragg Redwood Co.,* 92 Cal. 501, and cases cited; *Condee* v. *Gyger,* 126 Cal. 546; *Byxbee* v. *Dewey,* 128 Cal. 322.)

The burden was upon contestant to prove the allegations as to undue influence and unsoundness of mind. We have carefully examined the evidence, bearing the above principles in mind, and we do not think there was any abuse of discretion in granting the order.

As to the due execution and subscribing the will: The witness Fitzgerald testified that he wrote the will, at the request of deceased; that after it was written deceased signed it in the presence of witness and one Isola, the other subscribing witness; that the matter was explained to Isola, and then both witnesses subscribed the will as witnesses at the request of deceased. It is not seriously contended that the testimony of Fitzgerald was not sufficient to show the due execution of the will, but it is said in appellant's brief, "Proponent claims that Fitzgerald's testimony is the true version of what took place, but the jury evidently disbelieved him and believed Isola."

If the judge of the court below did not believe Isola, and did believe Fitzgerald, it was his duty to set aside the verdict as to this finding. Isola testified, as a subscribing witness, that the name of Fitzgerald was not on the will when he (Isola) signed it, that he did not believe that the name of deceased was on the will when he signed it, and that he first commenced to entertain this belief November 29, 1900. The will was dated June 1, 1897. Isola admitted, in cross-examina-

tion, that he told one Nelson, in August, 1900, that he thought the other names were on the will when he signed. Nelson testified that on the above occasion Isola stated to him positively that at the time he signed as a witness the deceased and Fitzgerald had already signed. It is not surprising that, in view of the above facts, the judge of the court below believed the evidence of Fitzgerald. Not only this, but the judge saw the two witnesses upon the stand, and had full opportunity to observe their demeanor and bearing, an opportunity of which we are deprived.

When a witness who has solemnly subscribed his name to a will as an attesting witness, knowing the nature of his act, and that deceased would rely upon his name as a part of the execution of the will, undertakes by his evidence to overthrow or cast suspicion upon it, his evidence should be closely scrutinized. (*Estate of Tyler*, 121 Cal. 413.)

It is claimed that the specifications of insufficiency of evidence as to the finding that the will was not duly executed are insufficient as to the probative fact of acknowledgment in the presence of the witnesses, and as to the fact that the will was subscribed in their presence. The specifications of particulars in which the evidence is insufficient are twenty in number, and point to almost every probative fact. It is specified that the evidence is insufficient to prove or establish that the will was not subscribed, executed, attested, made, and published by Motz and the subscribing witnesses; that it is insufficient to establish that the will was not executed by deceased, that it was not made and published by deceased, that the execution was not in the presence of said subscribing witnesses. The testimony appears to be all in the record. The specifications fairly notified the appellant of the contention of the respondent, and were sufficient within the rule as stated in the late case of *American Type etc. Co. v. Packer*, 130 Cal. 461. It is there said: "Whenever there is a reasonably successful effort to state 'the particulars,' and they are such as may have been sufficient to inform the opposing counsel and the court of the grounds, and the trial court has entertained and passed upon the motion, in my opinion, this court ought not to refuse to consider the case on appeal, and especially where, as in this case, the transcript shows that all the evidence has been brought up."

2. As to the findings, that the will was executed under undue influence, and that deceased was not of sound mind at the time of the execution, they may be considered together. In fact, the mental and physical condition of the testator at and about the time of the execution of a will is such an important factor in determining whether or not the will was that of the testator or an instrument procured by coercion and fraud, that the two questions are kindred and very closely interwoven and connected with each other. It is a matter of common knowledge that a person in declining health, whose body is weakened and emaciated by disease, is to a more or less degree impaired in his mind. The strength of will, the quickness of apprehension, and the reasoning powers become impaired as the body becomes enfeebled. In such case the testator is peculiarly exposed to the secret machinations and importunities of designing persons who in the guise of love and friendship have surrounded him and administered to his wants as life and reason have gradually ebbed away. The soundness of mind required for making a will has relation to the act of the testator in making final disposition of his property as he desires. Although feeble in health, suffering under disease, aged and infirm, the testator, if of sound mind with reference to the disposition of his property, may make a will. If he is able to understand and carry in mind the nature and situation of his property and his relations to his relatives and those around him, with clear remembrance as to those in whom and those things in which he has been mostly interested, capable of understanding the act he is doing, and the relation in which he stands to the objects of his bounty, free from any delusion, the effect of disease, which might lead him to dispose of his property otherwise than he would if he knew and understood what he was doing, he has the capacity to make his will. (*Whitney* v. *Twombly*, 136 Mass. 145.)

The testimony in this record as to the soundness of mind of deceased is conflicting. The greater number of witnesses testified that deceased was of sound mind. We cannot say that the judge below did not properly exercise his discretion in setting aside the finding that the deceased was of unsound mind. Undue influence, if such as to compel or procure the testator to do that which it was not his own will to do, and

which procures an instrument which is not the free and expressed intention of the testator, will vitiate the will. The influence must be undue influence in order to vitiate the instrument. Influences of different kinds surround every rational being, and operate necessarily in determining his course of conduct. The influence of love or duty prompts a man to provide for his wife and his children and other near relatives. The influence of pity often prompts a provision for some unfortunate friend. The influence of education may prompt a bequest to some institution of learning, or of religion to some church for charitable purposes. The kind of undue influence that will destroy the instrument must be such as in effect destroyed the testator's free agency, and substituted for his own another person's will. As said by this court, *In re McDevitt*, 95 Cal. 33, "Evidence must be produced that pressure was brought to bear directly upon the testamentary act."

*In re Langford*, 108 Cal. 623, the question is fully discussed, and it is there said: "In order to set aside a will for undue influence, there must be substantial proof of a pressure which overpowered the volition of the testator at the time the will was made."

We think the evidence in this record is such that the court below was justified in holding that there was not sufficient evidence of undue influence within the meaning of the law. The evidence of Fitzgerald shows that on the day of the execution of the will the deceased came to Fitzgerald's office alone and asked Fitzgerald to write his will. He handed Fitzgerald a piece of paper with a written memorandum upon it as to what he desired to be put into the will. He did not by any word or act intimate that he was being coerced into making the will. Respondent was not present at the time. There is no evidence that she ever asked deceased to make any will, or that she ever made any suggestion to him as to its contents. Certain evidence is pointed out by appellant which, it is claimed, shows undue influence.

Mrs. Herzog, who did washing for deceased and his wife, testified that she heard some "little spats and growling" while at the house; that respondent was always cross and dissatisfied, and complained of her husband being sick all the time, and said that he only married her as a nurse; that, in

her opinion, respondent was the boss,—"She was always against him; she was never satisfied with him."

The appellant testified that deceased on one occasion told him that "she wants all the property, he don't like to give it, but he have to please her"; that the deceased and respondent quarreled many times. "She bossed him in the work around the house; she was the boss there."

Other witnesses testified as to the deceased having quarrels with his wife; that he said she wanted his property; that a divorce was talked of; that respondent complained of his sickness, and said "he smelled bad, and she could not stay in the room with him," and to some other remarks of similar import.

The most of this testimony is made up of declarations of deceased made during his suffering. Respondent contradicts it in many respects, but, conceding it to be true, it is not conclusive that the will was the product of undue influence. The parties may have quarreled at times, they may have been dissatisfied with their married life, the wife may have been the "boss" around the house, and yet the will be the deliberate and expressed declaration of deceased. If every will could be set aside because of quarrels or expressions of dissatisfaction in moments of anger with the objects of the testator's bounty, there would be few valid ones. The law does not set aside wills for such trivial reasons. As said *In re Langford*, 108 Cal. 623, "As the law now stands that right [to make a will] cannot be frittered away after the death of the testator for trivial reasons. It is quite likely that in the case at bar the provisions of the will did not meet with the approval of the jurors; but their approval was not necessary."

It follows that the order should be affirmed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the order is affirmed.          McFarland, J., Temple, J., Henshaw, J.