[No. 17.   First Appellate District.—June 26, 1905.]

## CHARLES A. BALDWIN, Appellant, v. NAPA AND SO-NOMA WINE COMPANY, Respondent.

APPEAL—ORDER GRANTING NEW TRIAL—PRESUMPTIONS—INSUFFICIENCY OF EVIDENCE—DISCRETION.—Upon appeal from an order granting a new trial in general terms, all presumptions are in favor of the order; and where one of the grounds of the motion was insufficiency of the evidence to justify the verdict, the motion on that ground was addressed to the sound legal discretion of the court, and the order will not be reversed if no abuse of discretion appears.

ID.—CONFLICTING EVIDENCE.—Where the evidence was sharply conflicting upon material issues, the court did not abuse its discretion in granting a new trial for insufficiency of the evidence.

CONTRACT—CONTEMPORANEOUS CONSTRUCTION BY PARTIES.—The contemporaneous and practical construction of a contract by the parties is strong evidence of the meaning of equivocal terms.

ID.—ACTION FOR BREACH OF CONTRACT TO SELL WINES—AGREED DELIVERY PRO RATA—ESTOPPEL OF PLAINTIFF.—In an action for breach of a contract executed in March of the first year to sell and deliver wines, of which the defendant buyer agreed to take a specified number of gallons each year before September 1st, where the parties by agreement delivered and accepted a *pro rata* number of gallons as a completion of the first year's contract, the plaintiff cannot afterward be allowed to claim a breach for non-delivery of the specified number of gallons before September 1st in that year.

ID.—BREACH BY PLAINTIFF—NEW TRIAL.—Where the evidence fails to show a breach of the contract by the defendant, and shows that plaintiff himself was guilty of a breach in refusing to deliver wine called for by the contract, a verdict for the plaintiff was properly set aside and a new trial granted.

ID.—ACCOUNT OF PLAINTIFF—IMPROPER DEMAND OF PAYMENT—NOTICE OF CANCELLATION.—The plaintiff had no right to render an account and demand payment for wine agreed to be sold and which plaintiff had reserved for other parties, nor to demand payment for a greater number of gallons on the first year's contract than had been agreed to, nor to notify defendant that plaintiff would cause defendant's right to be canceled under the contract unless payment of the account was promptly made.

ID.—INSTRUCTION IGNORING AGREEMENT.—The court erred in giving an instruction for the plaintiff which ignored the agreement by the parties for *pro rata* sale and delivery in completion of the first year's contract.

ID.—IMPROPER MODIFICATION OF REQUEST—REFUSAL TO DELIVER WINES.—The defendant had the right to have the jury instructed that

plaintiff had no right to refuse to deliver any of the wines mentioned before the expiration of a contract year, provided they were within the amount called for by the contract; and it was error to modify a request to that effect by changing its substance.

APPEAL from an order of the Superior Court of the city and county of San Francisco granting a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Harold Wheeler, and M. F. Michael, for Appellant.

M. B. Kellogg, for Respondent.

COOPER, J.—This action was brought by plaintiff to recover damages for breach of a contract for sale of wines by plaintiff to defendant. The case was tried with a jury, and a verdict returned for plaintiff in the sum of $3,997.17, upon which judgment was entered. Defendant made a motion for a new trial upon the grounds of insufficiency of the evidence to justify the verdict; that the verdict is against law, and errors of law occurring at the trial and excepted to by the defendant. The court granted the motion in general terms.

All presumptions are in favor of the order made by the trial court, and an order granting a new trial will be affirmed here if it is found to be justified upon any statutory ground included in the notice of intention and properly in the record. This court will examine the entire record upon which the order was based, and if there be found in the record any error which would have justified the court in making the order it will be affirmed. (*Kauffman* v. *Maier,* 94 Cal. 276, [29 Pac. 481]; *Churchill* v. *Flournoy,* 127 Cal. 362, [59 Pac. 791].) One of the grounds of the motion was the insufficiency of the evidence to justify the verdict, and in such case the motion is addressed to the sound legal discretion of the court, and an order granting a new trial will not be reversed unless it appears that there was an abuse of such discretion. (*Bledsoe* v. *Decrow,* 132 Cal. 314; *Estate of Motz,* 136 Cal. 560, [69 Pac. 294.].)

The contract was made March 29, 1898, and its material

parts, so far as necessary to be stated for the purposes of this opinion, are the following:—

"This agreement, made March 29th, A. D. 1898, by and between C. A. Baldwin of Beaulieu, West Side, Santa Clara County, California, and Napa and Sonoma Wine Company of San Francisco, a corporation:

"C. A. Baldwin sells and the Napa and Sonoma Wine Company buys the following wines at present in the cellar at Beaulieu:

8,500 gallons Red Wine 1893 at 30 cents per gallon to be taken until January 1st, '99.

9,000 gallons Red Wine 1894 at 35 cents per gallon.

| 15,000 | " | " | " | 1895 | " | " | " | " | " |
|--------|---|---|---|------|---|---|---|---|---|
| 17,500 | " | " | " | 1896 | " | " | " | " | " |
| 2,000 | " | White | " | 1894 | " | " | " | " | ·" |
| 2,200 | " | " | " | 1895 | " | " | " | " | " |
| 22,000 | " | Red | " | 1897 | | | | | |
| 3,000 | " | White | " | 1897 | | | | | |
| 3,000 | " | " | " | 1896 at 35 cents per gallon. | | | | | |

"All of the above per gallon delivered f. o. b. cars San Francisco; cash less three (3) per cent.

"All wines except 1897 have been accepted; the 1897 wines the purchaser will examine and finally accept at the same price before April 1st, 1899, if he finds them to be equal in quality to previous vintages.

"Wines to be taken in carload lots one at a time, the buyer agreeing to take seventeen thousand five hundred (17,500) gallons each year before September 1st.

"C. A. Baldwin during this contract turns over all his trade foreign and on Pacific Coast he has at present, and all orders that he may get, to the Napa and Sonoma Wine Co. excepting only his trade with G. S. Nichols on the Atlantic Coast, for which he will reserve fifteen hundred (1,500) cases of each vintage; Mr. Baldwin reserving further privilege to sell his common wines not mentioned above in the general market."

The complaint alleges that although the plaintiff fully kept and performed the contract on his part, the defendant failed and refused to carry out or fulfill the contract on its part in several particulars, all of which is denied by the defendant.

One of the main allegations relied upon is, that defendant refused, and continues to refuse, to accept or pay for any further shipments of wine under the contract. The evidence upon this issue was sharply conflicting, and we think the court did not abuse its discretion in granting a new trial for this, if for no other reason.

The important question was as to who was at fault, or who committed a breach of the contract. The contract, made March 29, 1898, provides that 17,500 gallons of wine shall be taken each year before September 1st. There is some controversy, however, as to whether 17,500 gallons were to be taken before September 1, 1898, as there had then expired only about five months of the first year of the contract. But the parties themselves, by their correspondence and acts, construed the contract as calling only for a *pro rata* of the 17,500 gallons up to September 1, 1898. The letters of defendant to plaintiff show that defendant placed that construction on the contract. Lagarde, plaintiff's manager, who had full authority in the premises, testified that only 10,304 gallons were taken by defendant before September 1, 1898, and that he wrote to defendant, "this completes your first year's contract," and that when the question came up as to the first year being a short one the witness said: "I believe it was understood between Mr. Priber [president of defendant] and myself that would fill it for that year, and afterwards 17,500 gallons would have to be taken each year." The contemporaneous and practical construction of a contract by the parties is strong evidence of the meaning of equivocal terms. (*Keith* v. *Electrical Engineering Co.*, 136 Cal. 178, [68 Pac. 598].) The rule would apply with still greater force in a case like this, where the plaintiff is claiming a breach of the contract. He will not be allowed to claim a breach as to the time up to September 1, 1898, when he agreed with defendant that 10,304 gallons completed the first year's contract. We will, therefore, pass to a consideration of the year beginning September 1, 1898.

While the contract provides that defendant shall take 17,500 gallons of wine each year before September 1st, it does not provide that defendant shall take any particular wine first, nor does it provide that the white or red wine, nor the wine of any particular year, shall be taken first, nor the

manner in which it shall be taken, by defendant. Therefore defendant had the right, up to September 1, 1899, under the terms of the contract, to take 17,500 gallons of any of the wine sold to it, provided it give plaintiff reasonable notice, so as to enable him to deliver it. The complaint alleges that up to September 1, 1899, the defendant took and paid for only 17,923 gallons, and has failed and neglected to receive or pay for any greater amount, although often requested by plaintiff to do so. The contract included three thousand gallons of white wine of 1896 at thirty-five cents per gallon.

On July 1, 1899, defendant wrote plaintiff a letter, calling his attention to the fact that a month before it had ordered the 1896 white wine, and that plaintiff asked delay owing to pressing work on the farm, and promised it by September 1st, that defendant had arranged to take the white wine, but was also preparing to take two carloads of the red. To this letter plaintiff replied, July 6th, through his manager, that he was at work on the white wine, and would have the greater part of it, if not all, ready for delivery by September 1, 1899. August 11th defendant again wrote to plaintiff, calling attention to the letter of July 1st, and again requesting the delivery of the 1896 white wine, and reaffirming the order for two carloads of red wine.

To this letter plaintiff replied by letter August 14, 1899, and said: "I must decline again to ship the '96 white wine until you have carried out your agreement with respect to the previous vintage." Here is a positive statement by plaintiff during the year 1899, and before September 1st, that he will not ship the 1896 white wine until defendant has carried out his agreement with respect to previous vintages. We look in vain for any special agreement as to previous vintages.

But defendant again, on August 15, 1899, in answer to plaintiff's letter of August 14th, wrote to plaintiff, and in that letter said: "We cannot see by what right you will decline to deliver us this wine, and we will insist upon the shipment as soon as the same is in condition, which, as stated to us, would be before September 1st." To this letter plaintiff replied August 16, 1899, stating: "I shall gladly ship you the white wine when in condition, but I must decline to deplete my cellar of white wine unless you show a disposition to take up your quota of red."

To this letter the defendant replied August 18th, stating: "We received your favor of the 16th, and in reply can only regret that you again decline to deliver us the '96 white wine, and by so doing clearly show that you do not propose to carry out literally the terms of our agreement. . . . You are the one that was dilatory in action, and now you even break your contract by refusing emphatically the shipment of those 3,000 gallons of 1896 white wine."

Priber, the defendant's president, testified that he ordered the 1896 white wine, and plaintiff refused to ship it; that he "intended to and was able and willing to take all that the contract called for for the second contract year before the 1st of September, 1899, and would have done so, and could have done so, and paid for it. After they had refused to deliver any of the white wine I wrote to them that they had broken their contract."

On September 2, 1899, plaintiff sent defendant a statement of account for breach of contract, which included 8,500 gallons of 1893 red wine at thirty cents per gallon, amounting to $2,550, and also included the difference of the first contract year up to September 1, 1898, of about 7,500 gallons at thirty-five cents per gallon.

On September 14, 1899, plaintiff wrote to defendant inclosing the statement last referred to as an account, and in the letter stated: "Unless you make payment within the next four days [by September 18, 1899] I shall cancel all your rights under the contract."

It was stated by Lagarde, plaintiff's manager, while a witness on the stand, that 3,750 gallons of the 1893 red wine were reserved by plaintiff for Mr. Nichols for the trade on the Atlantic Coast. Plaintiff did not have the right to demand payment for 3,750 gallons of wine from defendant when plaintiff had reserved the wine for his eastern trade.

And as to the 7,500 gallons claimed in the statement to have been included in the quantity to be taken the first year, as we have before stated, that appears to have been settled by the parties by agreement and acquiescence under the contract.

Other matters claimed to be sufficient to justify the order granting a new trial upon the insufficiency of the evidence are discussed in the briefs, but it is not necessary to discuss

them in detail. What we have said is sufficient to show that the trial court had the right to grant a new trial upon the conflicting evidence. We do not mean to intimate nor express an opinion upon the weight of the evidence or the merits of the case.

The court at plaintiff's request gave the following instruction: ''The defendant was bound by the contract to take, receive and pay for 17,500 gallons of the contract wines before September 1st of each year; and if defendant failed to do so, such failure, so long as it continued (unless caused by the plaintiff's default in the performance of what he was to do) constituted a breach of the contract on defendant's part, and entitled plaintiff to consider the contract as abandoned by defendant, and to recover from the latter any damages resulting from such abandonment.''

This instruction ignores the agreement by the parties as to the amount of wine to be taken up to September 1, 1898. If, as before stated, the plaintiff agreed to consider a less amount than 17,500 gallons as being the amount called for by the contract up to September 1, 1898, he could not afterwards consider the failure to take the 17,500 gallons as a breach of the contract. By this instruction such failure constituted a breach, if plaintiff chose to consider it so, without regard to any waiver on his part.

Defendant requested the court to give the following instruction: ''The court further instructs you that, according to the terms of the contract, the defendant had until the 1st of September, 1899, in which to order and take the amount of wine it had contracted to take for the second contract year, and that before the expiration of such contract year, that is to say, before September 1st, 1899, the plaintiff had no right to refuse to deliver any of the wines mentioned to the defendant, provided the orders of defendant were kept within the annual amount of seventeen thousand five hundred gallons.'' The court refused this instruction, but gave it after striking out the words ''and that before the expiration of such contract year, that is to say, before September 1st, 1899, the plaintiff had no right to refuse to deliver any of the wines mentioned to the defendant.''

The instruction should have been given as requested. The plaintiff did not have the right to refuse to deliver any of

the wines mentioned before the expiration of the contract year, provided they were within the amount called for by the contract. Under the evidence the defendant had the right to have the jury so instructed. The instruction as given did not contain all the substance of the requested instruction.

It is not necessary to discuss other alleged errors, for the reason that what has been said shows that the order must be affirmed, and it is so ordered.

Hall, J., and Harrison, P. J., concurred.