[Civ. No. 1393.   Third Appellate District.—August 23, 1915.]

# W. H. WRIGHT et al., Respondents, v. YOSEMITE TRANS-PORTATION COMPANY (a Corporation), Appellant.

NEGLIGENCE—PERSONAL INJURIES—NEW TRIAL—INSUFFICIENCY OF EVIDENCE—DISCRETION.—The rule is well settled that a motion for a new trial on the ground of the insufficiency of the evidence to justify the verdict or other decision, is addressed to the sound legal discretion of the court, and that an order granting a new trial on this ground will not be reversed on appeal unless it appears that there was a manifest abuse of such discretion; and it is held in this action for damages for personal injuries sustained in falling from a stage coach that the trial court did not abuse its discretion in granting plaintiff a new trial.

ID.—MOTION FOR NEW TRIAL—DIFFERENT GROUNDS FOR—GENERAL ORDER.—In such a case where one of the grounds for the motion for a new trial was that the evidence was insufficient to support the verdict, but the motion was made on several distinct grounds, and it is not made to appear that any of the grounds was excluded from the consideration of the court in making its order or that the order was made upon one particular ground alone of those specified, if the order can be upheld on any of the grounds stated, it will be affirmed.

APPEAL from an order of the Superior Court of Mariposa County granting a new trial.   J. J. Trabucco, Judge.

The facts are stated in the opinion of the court.

Myrick & Deering, F. W. Ostrander, and James Walter Scott, for Appellant.

R. C. Gortner, and F. M. Fowler, for Respondents.

HART, J.—The plaintiffs are husband and wife, and this action was by them instituted for the recovery of damages, alleged to have been sustained by the plaintiff, Corinne K. Wright, from personal injuries which are charged to have been caused by the negligence of the defendant.

The jury, by whom the action was tried, found for the defendant, and thereupon the plaintiff moved for a new trial on the usual statutory grounds, among them that the verdict was not justified by the evidence, and the motion was allowed.

This appeal is by the defendant from the order granting said motion.

The general facts are well and briefly stated in the brief of counsel for the defendant as follows: "On July 10, 1910, Corinne K. Wright became a passenger upon a stage of the defendant company which was driven from the Hotel Sentinel, in the Yosemite Valley, to El Portal. Corinne K. Wright had paid for her ticket and the defendant was a common carrier. While the stage, which was drawn by four horses, was proceeding from the Sentinel Hotel along the national highway toward the western boundary of the national reservation near El Portal an accident occurred which resulted in both the horses and stage going over a steep embankment, and falling about fifty feet below the level of the traveled highway. Just before the stage went over the embankment Corinne K. Wright jumped, landing on the bed of the highway in a seated position, thereby bending her coccyx and receiving certain other injuries. . . . Upon the trial of the case the plaintiff showed that she was a passenger traveling upon the conveyance of a common carrier; that an accident occurred and that thereby she was injured."

Mrs. Wright testified that at a point about six or eight hundred feet from where the accident occurred several Indians, on horseback, and traveling in an opposite direction from that in which the stage was going, were approaching the coach and that, on seeing the Indians, the horses became very nervous and frightened. The driver ordered the Indians to pass on and to keep on their side of the road. After the Indians had passed the stage, she said, the horses seemed to "quiet down" and apparently remained so until the stage reached the point at which it went off the grade, when (she continued), "my attention was first called directly when the horses paused and the wheelers snorted and reared back, and in front I saw dust; but I did not distinguish what the leaders were doing. I took it all in in a flash, and sensed rather than looked and saw Miss Abbott (one of the passengers on the stage at the time) jump out on the river side, and just the next instant the driver rose in his seat and he said 'Jump!' I saw him trembling and agitated. I saw the driver rise up in his seat. I rose at the same instant that he said jump, and I jumped." She further testified that "at the place of the accident, the road was comparatively straight and slightly

down grade—what you would call a straight road for a mountain. . . . After the accident, I saw part of the road, about five feet long perhaps, and in its widest part, perhaps eighteen inches or so wide, where it had slid down. From the mountain side about opposite this place we looked after the accident, to see what we could see there and the only thing we could see that was in the least unusual was a little bit of fresh earth that had slipped down the road, caused by the burrowing of some little animal. It was about the size of an ordinary gopher hole. It had the appearance of fresh earth.''

Miss Abbott, another of the passengers, testified: ''Just before the stage arrived at the point of the accident, where the turn is on the road, I observed some Indians riding horseback. There were an old squaw and a boy. I noticed and know that the horses were much frightened at the time. Just prior to the time of the accident I saw the left horse floundering. He stumbled and floundered in the road. . . . Just before the floundering of the horse I was looking ahead and saw no hole or break in the road. The horse floundered just a short time before I alighted from the stage. The driver said to jump. I jumped out on the side next to the river.''

Miss Lang, testifying for the plaintiff, said: ''I sat in the middle and I could not see the horses very well. The first thing I noticed at the time the accident occurred, the stage, instead of going forward, seemed to go slow and turn directly almost at right angles. I jumped as soon as I could.''

The evidence tends to show that the plaintiff sustained serious injuries to the spine and that the same is of a permanent nature and has incapacitated her to a considerable extent from the pursuit of her professional labors—that of a teacher of art and music in a school with which she was so connected.

Practically upon the foregoing testimony the plaintiffs rested their case.

One of the witnesses for the defendant—a passenger on the stage at the time—stated that he was riding on the front seat with another passenger and the driver; that the horses displayed no evidence of fright when the Indians were met; that the driver stopped the stage to permit the Indians to pass; that thereupon the stage proceeded and the horses, appearing to be in no degree nervous or frightened, started into ''a little bit of a trot; well, really, a fast walk; a very slow

trot. We got into a little place that was pretty straight,'' proceeded this witness, ''and with a little trot, they kept that up, and as we got down to the point where the accident occurred, one of the horses, it seems to me, got his front knee kind of out a little bit; he did not fall down or anything. Kind of just stumbled a little bit and the other horse separated from him, stepped outside of the wheel track to the left, and it runs in my mind after that he probably went the length of himself walking along there and the ground had given out from underneath his feet. Instantly the driver pulled upon the horses, but it seems to me, I noticed in that particular, he drew harder on the right rein than he did on the other one. He pulled right up and the horse's head came around like that; this horse was floundering in what we might say was midair; the horse's feet was traveling some, but just cutting out the ground underneath his feet and gradually going, and I saw that the other horse, it seems to me, was working over a little bit that way, was being drawn over a little bit closer to that and finally that horse was going down into the hole there, turned out to the left, and by that time, I hollered 'jump!' and I think at the same time the driver said 'jump!' too. . . . He was then drawing the lines very tight, but just at that time he jumped.''

The witness, Owens, superintendent of the defendant, for the defense, testified that he visited the scene of the accident the morning following the day it happened, and made certain measurements. He said that, ''at the western end of the cave-in the width of the road, from the inner bank to the extreme edge of the bank, is fifteen feet and six inches; and on the east end of the cave-in the width of the road from the extreme edge of the bank to the inner bank is fifteen feet and four inches. From the measurements I made, the road at the point of the accident and before the cave-in ever happened was over fifteen feet wide. My testimony will be that the road was at least fifteen feet and four inches wide all along at that point. To get to the entire edge of the cave-in, a horse would have to move or step or shy or be shoved or something out of the track four or five feet.''

Owens also testified that he bought the two horses which worked in the lead at the time of the accident in the month of May, 1910 (the accident, as seen, occurred in the month of July, 1910), and that, prior to being used as stage horses,

one of them had been used in a two-horse team hay wagon and the other had worked a hay-press. He said both animals were gentle.

"The rule is well settled that a motion for a new trial on the ground of the insufficiency of the evidence to justify the verdict, or other decision, is addressed to the sound legal discretion of the court, and that an order granting a new trial on this ground will not be reversed on appeal, unless it appears that there was a manifest abuse of such discretion." (*Bledsoe* v. *Decrow,* 132 Cal. 312, 313, 314, [64 Pac. 397]; *Bjorman* v. *Fort Bragg Redwood Co.,* 92 Cal. 501, [28 Pac. 591]; *Ball* v. *American Trans. Co.,* 21 Cal. App. 438, [132 Pac. 82]; *Eidinger* v. *Sigwart,* 13 Cal. App. 677, [110 Pac. 521]; *Baldwin* v. *Napa etc. Wine Co.,* 1 Cal. App. 216, [81 Pac. 1037]; *Central Trust Co.* v. *Stoddard,* 4 Cal. App. 648, [88 Pac. 606].)

From the rule above stated it is manifest that a reversal of an order granting a new trial cannot be justified unless it clearly appears to the reviewing court that the trial court, in making such order, abused its discretion.

While the evidence before us is not as definite and clear as it might be upon the question whether the injuries received by Mrs. Wright were or were not the direct result of the negligence of the defendant, we cannot say that the court abused its discretion in awarding the plaintiffs a new trial.

It may be that the trial court was of the opinion, from the testimony, that the horses employed by the defendant in drawing the stage coach at the time of the accident, although previously experienced as farm horses, were so unaccustomed and undisciplined to stage work over mountain highways as to make them difficult to handle, even by an experienced driver, when for any reason they might become frightened and nervous from some object with which they were not familiar. Again, the court might have believed, from a review of the testimony, that the driver needlessly and carelessly drove too near the edge of the highway on the cañon or river side of the road and thereby struck the soft dirt usually to be found on the outer edge of a road on a mountain grade. There is, as we have shown, testimony to support either of these theories. As to the latter theory, it is to be observed that some of the witnesses for the plaintiffs testified that the road was practically on a straight line for a short distance before the

point at which the coach went over the grade was reached and that there were no holes or obstructions in the road, except that near the outer edge of the road, near where the off-horse stumbled, there was some soft dirt, the ground having apparently been undermined by the burrowing of a gopher or some other rodent. Then there was testimony presented by the defendant showing or tending to show: That the road at the point where the accident occurred was fifteen feet and four inches in width—sufficiently wide to make it unnecessary to drive near the extreme outer edge of the highway; that the horses were at no time nervous or frightened, but, on the contrary, proceeded along the road in a perfectly calm and quiet manner before and after the Indians were met and until the accident occurred. All this testimony could well have been viewed by the trial judge as supporting the theory of negligence on the part of the driver in the handling of the team.

Thus we have suggested two several theories reasonably deducible from the evidence and upon either of which the injuries sustained by the plaintiff might reasonably be imputed to the negligence of the defendant, and, while it is not within the province of this court to declare, even if it were possible for it to do so, that, upon a retrial of the case, either theory may or can be sustained by a preponderance of the evidence, it is proper to suggest them for the purpose of showing that, as we have before declared, it is impossible for this court to decide that the trial court was guilty of an abuse of the discretion with which it is invested in such instances when it granted the motion of the plaintiffs for a new trial.

It may be well enough to explain that another action to recover damages for the same injury received by Corinne K. Wright was brought by her husband and coplaintiff here against the defendant at the time the present action was instituted. It appears from the judge's certificate to the bill of exceptions prepared and filed in this action that this case and the case in which the husband was the sole plaintiff were consolidated and tried together before the same jury, and that in the last mentioned action the jury returned a verdict in favor of the plaintiff, W. H. Wright, awarding him damages in the sum of five thousand dollars. It is stated in the brief of counsel for the respondents in the present action, although not shown by the record, that the principal reason assigned by

the court for granting the defendant's motion for a new trial in the action in which W. H. Wright was the sole plaintiff was that the two verdicts, founded upon the same evidence, were irreconcilably repugnant to each other. Of course, the two verdicts, having been predicated upon the same testimony by the same jury, were irreconcilably inconsistent with each other, but whether the trial court was influenced in any degree or to any extent by that proposition in granting the motion for a new trial in either action is a question which we are not at liberty to consider in deciding this appeal; for, obviously, we must be governed solely by the record as it is made up and presented to us and are precluded from considering anything *de hors* the record. One of the grounds of the motion is, as has been shown, that the evidence is insufficient to support the verdict, and where, as here, the motion is made on several different grounds, and it is not made to appear that any of the grounds was excluded from consideration by the court in making its order, or that the order was made upon one particular ground alone of those specified, and if the order can be upheld upon any of the grounds stated, it will be affirmed.

As before declared, we cannot justly hold that the order was not legally warranted upon the ground that the verdict was not justified by the evidence, and the order appealed from is, therefore, affirmed.

Chipman, P. J., and Ellison, J., *pro tem.,* concurred.