[Civ. No. 14394.   Second Dist., Div. One.   Aug. 24, 1944.]

Estate of JOSEPH SIMMONS, Deceased.   CHRISTINE WILLIAMS, Appellant, v. RUTH STEWART et al., Respondents.

Macbeth & Macbeth for Appellant.

Ivan J. Johnson III and Loren Miller for Respondents.

YORK, P. J.—Joseph Simmons, a childless widower, by his last will which he executed on October 16, 1942, devised certain real property to friends of his, respondents herein, and named Mrs. Ruth Stewart, executrix and residuary legatee. Mr. Simmons died on March 22, 1943, at the age of eighty-one years, and Mrs. Stewart petitioned the court for the probate of the will and for letters testamentary, where-

upon Christine Williams, a niece of testator's predeceased wife, filed her opposition to the probate of said will on the grounds: (1) that it was not legally executed; (2) that testator was incompetent to make a will; and (3) that the will was executed through the fraud and undue influence of the beneficiaries.

The jury brought in a general verdict in favor of the proponents of the will and also special verdicts to the effect, (1) that testator was of sound and disposing mind and memory at the time of the execution of the will; (2) that he was not induced to execute the will by means of fraud or undue influence exercised by the proponents.

·From the judgment which was thereafter entered pursuant to such general and special verdicts, and admitting the will to probate, Christine Williams, the contestant, prosecutes this appeal, urging (1) that the execution of the will did not meet statutory requirements, and (2) testator was mentally unsound at the time he executed the will.

In connection with her first point, appellant claims: (1) that testator did not subscribe his name to the will; (2) that he did not sign it in the presence of the witnesses; (3) that he did not declare or publish the document as his last will; (4) that the witnesses were not requested by testator to subscribe their names to the will as witnesses; and (5) that neither witness subscribed his name to the will or otherwise in the presence of testator, nor in the presence of each other.

Testator, who was unable to read or write, executed the will by mark under the following circumstances, according to the testimony of Ivan J. Johnson, III, the attorney who prepared the will and was one of the witnesses thereto, as well as a witness to testator's signature by mark:

''Q. I will show you an instrument which bears the signature of Ivan J. Johnson, III. Is that your signature? A. That is my signature. Q. Did you prepare this document yourself? A. Yes. . . . Q. And at whose request? A. At Joseph Simmons'. Q. You may state whether or not he put his cross on the place for signature between the words 'Joseph' and 'Simmons'. A. He did. Q. Did he do that in your presence? A. He did. Q. And did you know Della Mae Fletcher (the other witness to the will)? A. I did. Q. Was she present at that time? A. She was . . . Q. You may state

whether or not she signed this document at that time. A. She did. Q. Did Mr. Simmons state anything in respect to this instrument? A. Yes. Q. What was said? A. I asked Mr. Simmons if he would declare this to be his last will and testament. He said that he did. I asked him at that time if he wanted Mrs. Fletcher and myself to sign it as witnesses. He said yes, he did. I asked him whether or not he was doing this of his own free will and accord, and not acting under duress or fraud or menace of any sort whatsoever, and he said, 'Yes', and he signed it—made his mark—then we signed it as witnesses. Q. All three signed in the presence of each other? A. We did. Q. I notice that there are also two signatures of witnesses opposite his signature, that is to say, Ivan J. Johnson, III, and Della Mae Fletcher. Is that your signature? A. Yes. Q. Did you see Della Mae Fletcher sign that? A. Yes, I did. Q. Do you know whether or not Joseph Simmons is still living? A. No, he is dead. . . . Q. I notice this instrument is dated the 16th of October, 1942. Is that the date it was actually signed? A. That was the date it was actually executed.''

On cross-examination, Mr. Johnson testified that Mr. Simmons talked to him several times about drawing a will, that Mr. Simmons gave the witness the names of the persons he wanted his property to go to; that Miss Williams' name was mentioned, but the testator said he ''didn't feel that she was entitled to anything as far as he was concerned, and he was not going to leave her anything''; that when the will was prepared, the witness took it to Mr. Simmons and read it to him and explained the language used, although, as stated by this witness, ''Mr. Simmons was a pretty shrewd man; he didn't need much explaining. . . . I read the will over to him once, and he asked me to read it to him again, and I read it to him again, and asked him if it was O.K. and he said yes. He had told me that he wanted to hear the will read before Mrs. Fletcher came in; and then, after we read it over a second time, I suggested that he call Mrs. Fletcher, which he did.''

Della Mae Fletcher testified that testator asked her to ''sign the will'' and that she was present when testator signed the document and that Attorney Johnson was also present; that she heard decedent declare the document to be his last will and testament before she signed it; that she remembered that

decedent walked over to a little table in the room and made his "X"; that Mr. Johnson then signed the will as a witness, and she signed underneath Mr. Johnson's signature, after she had read the will.

This evidence demonstrates that the testator made his mark at the end of the document; that the mark was witnessed by Johnson and Fletcher, who signed their names near the mark; that the testator, in response to questions asked him by his attorney, indicated that the document was his last will and testament, whereupon the witnesses Johnson and Fletcher signed their names to the attestation clause of the will, as requested by testator, in his presence and in the presence of each other. This was a substantial compliance with the provisions of section 50 of the Probate Code. (See *Estate of Norswing*, 47 Cal.App.2d 730, 733 [118 P.2d 858].) ■ The question of the due execution of a will is one of fact, and the trial court's determination on this issue cannot be overturned on appeal unless it is without support in the evidence. (*Estate of Goldsworthy*, 54 Cal.App.2d 666, 670 [129 P.2d 949], citing *Estate of Culberg*, 169 Cal. 365 [146 P. 888].) ■ The evidence produced herein on this question of due execution was amply sufficient to support the verdict of the jury and the judgment which followed.

As a second ground of appeal, appellant avers that at the time the will was executed, testator was of unsound mind, was suffering from senile dementia, and was in such extreme condition of mental and physical weakness that he was not in any respect capable of making a will.

■ The evidence presented at the trial in an effort to establish testator's incompetency was confined almost exclusively to assertions of witnesses that decedent drank heavily or excessively, as some of them stated. On the other hand, the physician called by contestant testified that for a man of his years, eighty some odd, testator was in as good physical condition "as a man of his age could possibly be"; that testator had arteriosclerosis, but that such condition did not necessarily indicate a weakening of the mind.

■ As stated in *Estate of Johanson*, 62 Cal.App.2d 41, 49 [144 P.2d 72] : "The test, which is not a difficult one to meet, is that one has testamentary capacity, 'if he is able to understand and carry in mind the nature and situation of his prop-

erty and his relations to his relatives and those around him, with clear remembrance as to those in whom and those things in which he has been mostly interested, capable of understanding the act he is doing, and the relation in which he stands to the objects of his bounty.' (*Estate of Motz* (1902), 136 Cal. 558, 562 [69 P. 294]; 26 Cal.Jur. 639.) A more rigid test would invalidate many wills, for it is of common knowledge that the making of wills is often deferred until the testator is in contemplation of impending death through old age or sickness. As a consequence many wills are made, and validly made, by those who no longer have ability to conduct their business affairs because of loss of mental vigor or partial loss of memory. Extreme care should be exercised in applying the settled rules to the facts of a given case, as a decision at variance with those rules would set an unfortunate precedent.''

The record reveals sufficient evidence to sustain the jury's special verdict that testator was of sound and disposing mind and memory at the time of the execution of the will dated October 16, 1942.

For the reasons stated, the judgment appealed from is affirmed.

Doran, J., and White, J., concurred.