55 Cal.App.3d 76 (1976)
127 Cal. Rptr. 438
Estate of PATRICK MANGERI, Deceased.
LORRAINE H. SVIEN et al., Petitioners and Appellants,
v.
ELMER M. WALTERS, as Executor, etc., Objector and Respondent.
Docket No. 14244.
Court of Appeals of California, Fourth District, Division One.
February 4, 1976.
*78 COUNSEL
Palladino, Polis & Hunt, Charles J. Hunt, Jr., and Gerald D. Polis for Petitioners and Appellants.
Harrington, Waddell & Briggs and Don L. Harrington for Objector and Respondent.
OPINION
AULT, Acting P.J.
After granting a motion for summary judgment,[1] the trial court entered a judgment dismissing a petition for the admission to probate of a will purportedly executed by Patrick Mangeri on February 17, 1972. Denial of probate was based upon the trial court's determination that the will of that date had not been executed in conformity with the requirements for execution of wills by mark. The proponents of the will have appealed. No procedural questions are raised, the facts are not in dispute, and the sole issue on appeal is whether the will was executed in conformity with statutory requirements.
On February 17, 1972, Lorraine H. Svien and Virginia Martone went to the law office of John Palladino in Riverside, California, and requested him to prepare a will for Patrick Mangeri, a relative.[2] They told Palladino that Mangeri was in a hospital and had requested them to have a will prepared according to his specific instructions concerning the *79 distribution of his estate in the event of his death. Acting on the instructions of the two women, Palladino caused a four-page typewritten will to be prepared.
Unable to go to the hospital to supervise the execution of the will, Palladino turned the prepared will over to Mrs. Svien and Mrs. Martone after instructing them concerning its execution. He understood they would deliver the will to Mangeri at the hospital for execution.
Four persons in addition to Mangeri were present in the hospital when the will was signed later that day: Mrs. Martone, Joseph Spagnola, Robert Ferrara and Liberatore Furno. When it came time to execute the will, Mangeri stated he could not sign his name because his hands were "too shaky" and that he would sign by an "X." This he did on the signature line which had been provided near the bottom of page 3 of the will. The name "PATRICK MANGERI" had been typed under this line by the attorney who had prepared the document. Following a normal attestation clause, Ferrara and Furno then signed as attesting witnesses. We reproduce here the portions of page 3 and page 4 of the will which contain Mangeri's mark and the signatures of the two attesting witnesses.[3]
I subscribe my name to this Will 17th day of February, 1972, at Riverside, California.
 _______________________________________
 PATRICK MANGERI
On the date last above written, PATRICK MANGERI declared to us, the undersigned, that the foregoing instrument, consisting of three (3) pages, including the page signed by us as witnesses, was his Will and requested us to act as witnesses to it. He thereupon signed this Will in our presence, all of us

-3- *80 being present at the same time. We now, at his request, in his presence and in the presence of each other, subscribe our names as witnesses.
______________________ Residing at _______________________
_______________________
______________________ Residing at _______________________
_______________________
______________________ Residing at _______________________
_______________________

-4-
(1a) Probate Code section 50, which prescribes the requirements for execution and attestation of formal wills, reads as follows:
"Every will, other than a nuncupative will, must be in writing and every will, other than a holographic will and a nuncupative will, must be executed and attested as follows:
"(1) Subscription. It must be subscribed at the end thereof by the testator himself, or some person in his presence and by his direction must subscribe his name thereto. A person who subscribed the testator's name, by his direction, should write his own name as a witness to the will, but a failure to do so will not affect the validity of the will.
"(2) Presence of witnesses. The subscription must be made, or the testator must acknowledge it to have been made by him or by his authority, in the presence of both of the attesting witnesses, present at the same time.
"(3) Testator's declaration. The testator, at the time of subscribing or acknowledging the instrument, must declare to the attesting witnesses that it is his will.
*81 "(4) Attesting witnesses. There must be at least two attesting witnesses, each of whom must sign the instrument as a witness, at the end of the will, at the testator's request and in his presence. The witnesses should give their places of residence, but a failure to do so will not affect the validity of the will."
Section 14 of the Civil Code and section 17 of the Code of Civil Procedure, insofar as applicable here, are identical and provide in pertinent part: "...; writing includes printing and typewriting; oath includes affirmation or declaration; and every mode of oral statement, under oath or affirmation, is embraced by the term `testify,' and every written one in the term `depose'; signature or subscription includes mark, when the person cannot write, his name being written near it, by a person who writes his own name as a witness; ..."
The quoted provisions of the Civil Code and the Code of Civil Procedure have been construed together with Probate Code section 50 to permit subscription of a will by mark when the testator cannot write. But the statutory provisions requiring the witness to write the testator's name near his mark and to sign his own name as a witness must be met. "If the testator cannot write, then the mark is permitted if the name of the testator is written out by the witness and the name of the witness is added." (Estate of Edwardson, 186 Cal. App.2d 122, 127 [8 Cal. Rptr. 889].) Here the attorney who prepared the will caused Mangeri's name to be typewritten below the line prepared for his signature. Mangeri placed his mark upon the signature line, but the attorney who prepared the will was not present when the mark was made, did not witness it, and did not sign his own name as a witness.
None of the reported cases dealing with subscription by mark have approved the procedure followed here. (See e.g. Estate of Dombrowski, 163 Cal. 290 [125 P. 233]; Estate of Simmons, 65 Cal. App.2d 533 [151 P.2d 8]; Estate of Cecala, 92 Cal. App.2d 834 [208 P.2d 436]; Estate of Moore, 92 Cal. App.2d 120 [206 P.2d 413]; Estate of Gooch, 211 Cal. App.2d 1 [26 Cal. Rptr. 835].) Among these cases, Gooch comes closest to our factual situation. The attorney who prepared the will in Gooch knew it would be subscribed by mark and caused the name of the testator to be typewritten near the place where the mark was to be made. However, the attorney was present when the testator made his mark on the will and signed his own name, both as a witness to the mark and as an attesting witness to the will itself. The holding of the case is that the *82 name of a testator subscribing by mark may be typewritten as well as handwritten (see portions of Civ. Code, § 14 and Code Civ. Proc., § 17 quoted above) and that such act may be performed before as well as after the testator's mark is placed on the will. The case does not hold that the person who writes the testator's name near the mark need not be present when the mark is made and need not sign as a witness to the mark.
Citing cases which hold that the statutes governing the execution of wills should be liberally construed to uphold the validity of wills (Estate of Baker, 59 Cal.2d 680, 683 [31 Cal. Rptr. 33, 381 P.2d 913]; Estate of Janes, 18 Cal.2d 512, 515 [116 P.2d 438]; Estate of Helmar, 33 Cal. App.3d 109, 112 [109 Cal. Rptr. 6]; Estate of Williams, 198 Cal. App.2d 238, 241 [17 Cal. Rptr. 716, 89 A.L.R.2d 1194]), the proponents urge us to reverse the trial court and rule that the will under consideration was executed in substantial compliance with statutory requirements. Since Mangeri's name was already typewritten below his mark, they argue the maker of the mark was already identified (see In re Guilfoyle, 96 Cal. 598, 600 [31 P. 553]) and that it would have been a useless act for the attesting witnesses, or one of them, to have rewritten Mangeri's name near his mark on page three. They conclude the signatures of the two attesting witnesses on the fourth page of the document served to witness the mark as well as the will and that all of the purposes of the statutory requirements for subscription by mark were fulfilled.
(2) As pointed out in Estate of Helmar, supra, 33 Cal. App.3d 109 at page 113, the trend toward liberality in construing statutes governing the execution of wills is largely confined to cases concerning holographic wills, "... and appears to have been applied only in situations where the purported wills were written on paper, usually hotel stationery, upon which there was `printed' a letterhead or other advertising material which was not in fact incorporated into the document by the writer himself." (3) Strict compliance with the code requirements as to handwriting, date and signature remains essential. (Ibid.)
(4) As to witnessed wills, the rule of construction still seems to be that expressed in Estate of Howell, 50 Cal.2d 211 at page 215 [324 P.2d 578]: "Statutory requirements must be strictly followed in the execution of a will, and the testator's intention is not to be considered in determining whether such requirements have been met. (Estate of Moore, 92 Cal. App.2d 120, 122....)" (See also Estate of Edwardson, supra, 186 Cal. App.2d 122, 127.)
*83 Even rules of liberal construction do not permit us to ignore clear and explicit statutory requirements. There may be procedures other than those prescribed by the Legislature which would equally assure the authenticity of wills subscribed by mark. The question whether a will was executed in conformity with statutory requirements must be determined by reference to what the statutes themselves require. It is not enough to say that the procedures actually followed, while not in accordance with those requirements, were arguably as good.
(1b) In this case the person who wrote Mangeri's name under the line where the mark was placed was not present when the mark was made. Mangeri's name was not written on the will by any other person. The requirements for subscription by mark set forth in Civil Code section 14 and Code of Civil Procedure section 17 were not complied with, substantially or otherwise.
The judgment is affirmed.
Cologne, J., and Whelan, J.,[*] concurred.
Appellants' petition for a hearing by the Supreme Court was denied March 31, 1976.
NOTES
[1] The motion for summary judgment was filed by Elmer M. Walters, as executor of the will of Patrick Mangeri, dated April 16, 1971. This will was admitted to probate on June 8, 1972.
[2] Lorraine H. Svien is the step-daughter of Patrick Mangeri, and Virginia Martone is his sister.
[3] Two discrepancies appear in that portion of the will which is reproduced: (1) the will, including the page signed by the attesting witnesses, consists of 4 pages, not 3 pages as stated in the attestation clause; (2) the will recites above the line where the mark appears that it was subscribed on February 17, 1972, but both attesting witnesses indicate in conjunction with their signatures that they were affixed on February 16, 1972. Neither party comments on these discrepancies, and we regard them as errors not affecting the validity of the instrument.
[*] Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.