[L. A. No. 10048. In Bank.—September 18, 1929.]

G. W. McNEAR, Appellant, v. PETROLEUM EXPORT CORPORATION (a Corporation), Respondent.

Lorrin Andrews and Ira S. Lillick for Appellant.

Black, Hammock & Black and Carey McWilliams for Respondent.

SHENK, J.—This is an appeal from a judgment of nonsuit granted on the motion of defendant made at the close of the plaintiff's opening statement to the jury.

The plaintiff brought the action to recover the sum of $68,637.60 as damages for breach of an alleged contract to sell two cargoes, or some six million gallons, of gasoline. The action came on for trial before a jury, and during his opening statement plaintiff's counsel read the following two documents to the jury:

"October 14th, 1925.

"As broker I confirm the sale of the following goods at the price and terms mentioned below.

"This is subject to acceptance by both seller and buyer and their acceptance makes this contract binding.

"Seller: Petroleum Export Corp., Los Angeles, Calif., U. S. A.

"Buyer: G. W. McNear, 423 California St., San Francisco, Calif., U. S. A.

"Goods: Gasoline, 61 to 63 degrees Beaume gravity, 40% distilling below 212 degree F., end point not over 400 degrees F. See detailed specifications below.

"Quantity: Two cargoes, each about 7,500 tons 10% more or less or the full capacity of the vessels. Tons referred to are 2240 lbs. each.

"Price: 11¢ per American measured gallon delivered F.O.B. buyer's tank vessels at Port of Los Angeles, Calif., U. S. A.

"Terms: Net cash against shipping documents and petroleum inspector's certificate of quantity and quality in San Francisco.

"Shipment: One cargo during the month of December, 1925, and the other cargo between December 15th, 1925, and January 15th, 1926.

"Specifications: Gravity 61 to 63 degrees Beaume. 40% distilling below 212 degrees F. End point not over 400 degrees F. Sweet to Doctor test and must stand corrosion test. Color not darker than 25 Saybolt. Sulphur not over .10%.

"All tests to be made according to methods for testing contained in U. S. Government Technical Paper 323A, part two.

"Inspection: Each cargo is to be inspected by Charles Martin & Co. for quality and quantity and they are to issue their certificates for same and settlement made thereon. Cost of said inspection to be equally divided between buyer and seller.

"Other conditions: Seller guarantees not less than 30' of water at the loading dock and that the vessels can always lie safely afloat.

"Seller is to load buyer's vessels at a rate of not less than 1800 tons per day. Should the loading rate be less than this seller is to pay demurrage at the rate of 36¢ per net registered ton of the vessel. Time to count from the time the captain notifies seller that he is ready to load.

"Sampling of cargoes to be sealed in presence of captains of the vessels and one set given to the captain.

"Respectfully submitted

"Accepted                                                          "Broker.

"Accepted

"Seller                                              "Buyer."

"Los Angeles, Calif., Oct. 16th, 1925.

"Mr. G. W. McNear,

"San Francisco, Calif.

"433 California St.

"Collect

"Smith of Petroleum Export says will fill order for two cargoes gasoline. Will sign contracts when contracts for tanks etc are closed probably today. Making arrangements for General Petroleum to load first vessel in case of need.

"W. K. THOMPSON."

The plaintiff offered to prove that W. K. Thompson, named as the signer of the telegram, was a broker; that the Mr. Smith mentioned at the beginning of the telegraphic message was general manager of the defendant, Petroleum Export Corporation, and had authority to close any contract for the sale of gasoline on behalf of the defendant; that said Smith approached W. K. Thompson for the purpose of effecting a sale of two shiploads of gasoline of the grade and quality specified in the document dated October 14, 1925, and which is termed by the parties an "order," at the price of eleven cents a gallon, delivered at the port of Los Angeles; that Thompson successfully negotiated with the plaintiff in San Francisco to buy the gasoline at the price stated and that the plaintiff asked Thompson, the broker, to prepare an order, which the broker did in the words of the document herein quoted dated October 14, 1925, but which, as is shown, was unsigned; that two days later Mr. Smith went to Mr. Thompson's office and dictated the telegram dated October 16th, 1925, hereinabove quoted, and which Mr. Thompson wrote and sent in the presence of Smith; that the plaintiff received the telegram and thereupon telephoned to Mr. Thompson at Los Angeles that the matter was satisfactory; but that, though the plaintiff was ready, able and willing to receive and pay for the two cargoes of gasoline, the defendant has refused to deliver them. The complaint alleged a contract

for the purchase and sale of gasoline of the same quantity, grade and specifications and for the same price as set out in the so-termed "order" of October 14th.

The trial court granted the motion for a nonsuit on the ground that the alleged contract was invalid because there was no note or memorandum thereof in writing subscribed by the party to be charged or by his duly authorized agent. (Civ. Code, sec. 1624, subd. 4.) As grounds for his appeal from that judgment the plaintiff contends that the terms of the contract relied upon need not all be embodied within the signed writing, but may be incorporated therein by a reference in the signed writing to a writing which is not signed; that the signature need not be at the bottom of the instrument, but may be found at the top, middle, or elsewhere therein; that the words "Smith of Petroleum," in the telegram of October 16th, written at the request and in the presence of Smith, is a sufficient signature of the party to be charged by his agent, within the meaning of the rule, and that the act of Thompson in writing Smith's name was the act of Smith. On the defendant's part it is contended that, even conceding the contentions of the plaintiff, still there is no completed or concluded contract between the parties; that more remained to be done before the minds of the parties could meet on a complete acceptance than merely the reduction of their agreement to a formal writing.

It must be concluded that the signature "W. K. Thompson" at the bottom of the telegram is not a signature by the party to be charged or by his agent sufficient to satisfy the requirements of the statute. Thompson did not purport to sign as the agent of the defendant, and even if he had done so there was no offer of proof that he had written authority so to do. (Sec. 2309, Civ. Code.)

It is, however, argued that by inserting the name "Smith" at the beginning of the telegram Thompson was acting as the amanuensis of Smith, and when that name was so placed at the direction of Smith the insertion thereof became the signature of Smith sufficient to bind the defendant. The contention is without merit and the authorities cited by the plaintiff are not applicable to the facts here presented. In each of the cases relied upon the document was purported to be signed by the party to

be charged. Here the telegram relied upon as binding the defendant is not signed by the defendant nor by anyone purporting to act for the defendant in a representative capacity. The fact that Thompson inserted the name "Smith" in the body of the telegram at the instance and request of a representative of the defendant company can-not bring the case within the rule that the signature need not be at the end of the document but may be elsewhere. Something further is required. ■ The rule requires that the signature necessary to satisfy the requirements of the statute, wherever placed or adopted or appropriated, must be so placed with the intention of authenticating the writing. (27 Cor. Jur. 288.) That the intention to sign and authenticate the document is an indispensable factor is established in other jurisdictions, as shown in the cases cited in Corpus Juris, and the rule is well illustrated by cases in this state involving the sufficiency of signatures to holographic wills, wherein it has been held that wherever the signature to a will may be placed, the fact that it was intended as an executing signature must satisfactorily ap-pear on the face of the document itself (*Estate of Man-chester*, 174 Cal. 417 [Ann. Cas. 1918B, 227, L. R. A. 1917D, 629, 163 Pac. 358]; *Estate of Morgan*, 200 Cal. 400 [253 Pac. 702]), and that proof of such intention may not rest in parol. (*Estate of McMahon*, 174 Cal. 423 [L. R. A. 1917D, 778, 163 Pac. 669].)

We see no good reason why this rule of evidence should not apply generally to instruments claimed to have been signed, contrary to the universal custom (*Estate of Man-chester, supra*), at some place other than at the end thereof. In no other way may the integrity of the statute requiring the writing be preserved.

■ We come then to the consideration of whether the telegram in question shows on its face that it was the in-tention of Smith to execute the document either personally or on behalf of the defendant corporation. It appears beyond cavil that it was signed at the usual place for sign-ing by W. K. Thompson individually and not in any rep-resentative capacity whatever. If Thompson had signed Smith's name at the end of the telegram at the latter's instance and request, or if the telegram had been formu-lated at Smith's direction and transmitted unsigned at the

bottom, a different question might arise. But admittedly such is not the case. The argument of the plaintiff is, in effect, that the telegram was signed twice, once by Thompson at the usual place for the signature on such a document, to wit, at the end thereof, and also by Smith in the body of the instrument. To approve the contention would be an undue extension of the rule. It seems more reasonable to conclude that the intent of inserting the words "Smith of Petroleum Export" at the beginning of the telegram was for the purpose of identification and not authentication. In such a case the statute of frauds is not satisfied. (*Sutherland* v. *Munsey*, 119 Va. 791, 798 [89 S. E. 882].)

There is also merit in the defendant's contentions that the terms of the telegram are too indefinite and do not contain all of the elements of a contract as to price, terms, etc., and that in any event there was no reference in the telegram sufficient to incorporate therein the terms of the first but unsigned document, even assuming that the first document could be so incorporated; but these contentions become of no importance in view of our conclusion that the telegram was not signed by the party to be charged nor by his authorized agent.

The judgment is affirmed.

Richards, J., Preston, J., Langdon, J., Waste, C. J., and Curtis, J., concurred.