[Civ. No. 489. Fourth Appellate District.—June 2, 1931.]

In the Matter of the Estate of LOVINA BAUMAN, Deceased. MARGARET J. SHUMAKER et al., Respondents, v. J. H. WAGNER, Executor, etc., et al., Appellants.

Allen E. Rogers for Appellants.

Tompkins & Clark and John A. Hewicker for Respondents.

BARNARD, P. J.—This is an appeal from an order denying a petition for the probate of an alleged will. The instrument, the probate of which was refused on the ground that the document was not signed by the deceased, reads as follows:

"3714 5th Ave., San Diego, California, April 9, 29. That I Lovina Bauman, on this date April 9th 1929, desire my wishes herein executed as stated, after my death notify my Cousin J. H. Wagner, 1119, W. P. P. Ave., Colorado Springs, Colorado, have him attend to affairs & all as herein requested. To pay all my expenses from sale of my property, 3714 5th Ave., Lot 11, Block 3, Brooks Add. & he receive $1000. and $500. each to my 2 Nieces and Nephews living in Salem, Oregon. $500. to Presbyterian Church 3 & 4th Date St. San Diego, Cal. Helping Hand Home 1806 J St., $100. and bedding & my clothes. Sell all furniture & if any left divide equally between J. H. Wagner & my 2 Nieces & 2 Nephews when all expenses paid herein is my utmost wishes may they be granted as requested."

A photographic copy of the document appears in the transcript. It was stipulated that the instrument is entirely in the handwriting of the deceased, and the only question presented is whether or not it was signed by Lovina Bauman within the meaning of section 1277 of the Civil Code.

The rules governing the decision of such a question are well established, although their application in a particular case often presents a close question. As expressed in *Estate of Manchester,* 174 Cal. 417 [Ann. Cas. 1918B, 227,

L. R. A. 1917D, 629, 163 Pac. 358], and frequently followed since, the general rule is:

"The true rule, as we conceive it to be, is that, wherever placed, the fact that it was intended as an executing signature must satisfactorily appear on the face of the document itself. If it is at the end of the document, the universal custom of mankind forces the conclusion that was appended as an execution, if nothing to the contrary appears. If placed elsewhere, it is for the court to say, from an inspection of the whole document, its language as well as its form, and the relative position of its parts, whether or not there is a positive and satisfactory inference from the document itself that the signature was so placed with the intent that it should there serve as a token of execution. If such inference thus appears, the execution may be considered as proven by such signature."

In a number of cases, in considering whether or not there are indications on the face of an instrument that a signature which appears in an unusual place thereon was intended as an execution thereof, considerable weight is given to the fact that the will appears to be incomplete (*Estate of Manchester, supra; Estate of Hurley,* 178 Cal. 713 [174 Pac. 669] ; *Estate of Bernard,* 197 Cal. 36 [239 Pac. 404, 405] ; *Estate of Devlin,* 198 Cal. 721 [247. Pac. 577] ). In *Estate of Bernard,* the last clause was especially considered in connection with the intent of the writer as to the execution of the instrument. In that case, the court said:

"There is no signature at the end of the document, where it is the common custom to place a signature intended for authenticating and indicating the completion of an instrument. The signature of the decedent appears only in the *exordium,* and there is nothing in any other part of the alleged will to indicate affirmatively or by necessary implication that the signature was intended to be or was adopted as the final executing signature in authentication of or in execution of the document as a completed testamentary act. The obvious and natural inference to be drawn from the position of the name of the decedent in the alleged will is that it was intended merely as *descriptio personae,* and, in the absence of anything affirmatively appearing on the face of the will itself tending to show that such signature was intended to authenticate it, this conclusion is inevitable. . . . The abrupt

termination of the document near the middle of the last page is a strong indication of decedent's intent to do something more in order to make it a complete will. The last clause being, in all general respects, similar to the preceding dispositive clauses manifests that the writer did not intend to terminate the document finally and definitely at that particular point, but, rather indicates that something additional was to be done and necessarily compels the conclusion that decedent had no intention of adopting the name written in the opening clause of the will as the executing signature to her final testamentary act.''

In *Estate of Hurley, supra,* the effect of the closing paragraph upon the question before the court was also considered, the court saying:

''In the present case the signature appears in the opening statement of the paper, but there is nothing in the document or in the closing paragraph to indicate that the testatrix intended to adopt that signature as the executing signature of the will. Indeed, the contrary may be inferred from the fact that the will terminates without even a punctuation mark, thereby indicating that the testatrix ceased writing before she had completed declaring her intention and that she did not regard the document as a completed will. But the contrary inference need not appear. In the absence of anything on the face of the will to raise the inference that the name in the *exordium* was intended as a signature in execution, the holographic document cannot be deemed a valid will.''

In all of the cases bearing upon this question the entire instrument is examined and such facts as completeness, final expression, abruptness in closing, and even final punctuation are considered for the purpose of determining whether the writer intended to adopt the name as written in the opening clause, or in any other place not usual to a signature, as an execution of the instrument rather than merely as a description of the person. The importance of such considerations as have just been referred to fully appears both in those cases where purported wills have been rejected and in those where such signatures, though irregular, have been held sufficient (see *Estate of McMahon,* 174 Cal. 425 [L. R. A. 1917D, 778, 163 Pac. 669]; *Estate of Streeton,* 183 Cal. 284 [191 Pac. 16]; *Estate of Morgan,*

200 Cal. 400 [253 Pac. 702]; *Estate of England,* 85 Cal. App. 486 [259 Pac. 956]).

In *Estate of Sullivan,* 94 Cal. App. 674 [271 Pac. 753], the completeness of the instrument and the wording of the final clause of the original will are said to sufficiently indicate the testator's intention to adopt the signature in the *exordium* as an execution of the will. Whether or not that part of the opinion was necessary to the decision of the case, in view of the fact that the court also held that a properly executed codicil sufficiently referred to the original will to make it a part of itself, this case follows all of the authorities in considering the completeness or lack of completeness of the entire will, and in considering the effect of the final clause in determining the intent of the testator in regard to adopting the irregular signature as an execution of the instrument.

Applying these rules to the case before us, we are of the opinion that it sufficiently appears from the face of the instrument that the name of this testatrix, written by her in the opening words of the will, was intended by her as an executing signature, and that there is a positive and satisfactory inference from the document itself that this sig-. nature was placed therein by the testatrix with that intent. While the instrument discloses that the writer was not familiar with the customary form of a will, and that, in fact, she was somewhat deficient in education, the instrument is complete in that it makes specific bequest, appoints an executor (although in other than legal terms), and contains a residuary clause. It closes with a period, and the final clause gives a finishing touch indicating that the testatrix considered it a completed thing with nothing more to be added. The first sentence is different from the ordinary *exordium* of a will and, instead of being so worded as to indicate that the name written there is descriptive only, is so worded as to indicate to a considerable extent that her name was written for the purpose of executing the document. This seems especially true when the language used is taken in connection with the final words "herein is my utmost wishes may they be granted as requested", which were plainly meant to be a concluding sentence. We think these words not only indicate completion, but that they refer back to the opening words "That I Lovina

Bauman—desire my wishes herein executed as stated''. These final words, in relating back to the opening words, disclose an intention to execute the instrument. They import that something has been executed and that a definite request has been made. This definite request is expressed in the opening lines, and the final words, in referring thereto, plainly show an intention to adopt the same and strongly indicate that in writing her name in making the request that her wishes be carried out she intended to do so as authenticating that request, or, in other words, as a token of her execution of the instrument. After making her request, naming an executor and inserting a residuary clause, the testatrix' mind plainly turned back to the idea first set forth in the instrument, in which she states that it is her desire to have the wishes she sets forth executed after her death. We think this shows an intention to adopt her name so written as a signature.

In *Estate of McMahon*, 174 Cal. 423 [L. R. A. 1917D, 778, 163 Pac. 669], the court said: ''But the language last employed by the testatrix clearly indicates that the testatrix had concluded her writing and thus had completed the expression of her testamentary intent, and it is a most reasonable construction of that language to say that she adopted her signature in the *exordium* as her signature in execution of the will when she declares that 'The foregoing, entirely written, dated and signed by my own hand' is her last will and testament.''

In the case before us, not only does the closing language indicate that the testatrix had fully completed her purpose, but it is a reasonable construction of the language used, that she thereby intended to refer to and adopt all of the opening words in which she expresses her last wishes, including her signature. From a perusal of the entire document, it seems apparent that the name of the testatrix was written therein ''with the intention by so writing it to authenticate the document'' (*Estate of Manchester, supra*), which is all that is required to constitute a valid signature under the statute.

For the reasons given, the order appealed from is reversed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 22, 1931, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 30, 1931.