[Civ. No. 7585. Third Dist. May 27, 1949.]

Estate of CHARLES WILLIS MOORE, Deceased. CELINA THOMAS, as Administratrix, etc., Appellant, v. FLORENCE KALB, Respondent.

Laurence J. Kennedy and L. C. Smith for Appellant.

Curtis E. Wetter and Rawlins Coffman for Respondent.

ADAMS, P. J.—Charles Willis Moore, also known as C. W. Moore, died November 30, 1947, leaving as heirs at law a sister and numerous nieces and nephews. Celina Thomas, a niece with whom decedent had been living, was appointed administratrix of his estate. In January, 1948, Mrs. Thomas found in decedent's Bible a document purporting to be the will of decedent, which she offered for probate. Florence Kalb, another niece of decedent, contested the will on the ground that it was not executed in conformity with section 50 of the Probate Code, and, on trial of the issues presented, the court denied admission of the instrument to probate.

The evidence shows that the contested document was originally entirely typewritten, "C. W. Moore" being typed at the end thereof; that decedent secured three persons to sign same as witnesses, and at that time personally wrote "C. W. Moore" at the beginning, after the typewritten words "Nov. 5 1947 I,". There is no evidence whatsoever that decedent himself typed the document or that he even knew how to type; nor does it appear by whom or when or where it was typed. It was signed by the witnesses in the lobby of the Tremont Hotel in Red Bluff, at Moore's request, and at that time he stated that it was his will. He then wrote his name at the beginning of it, with pen and ink, as aforesaid.

The sole question presented is whether or not the typed name of the testator at the end of the document constitutes his signature, there being no evidence that same was affixed by decedent himself, and no acknowledgment by him that the typed name was his signature.

Section 50 of the Probate Code provides that every will, other than a nuncupative will, must be in writing, and every will, other than a holographic will and a nuncupative will, "must be subscribed at the end thereof by the testator himself, or some person in his presence and by his direction must subscribe his name thereto." Also, "The subscription must be made, or the testator must acknowledge it to have been made

by him or by his authority, in the presence of both of the attesting witnesses, present at the same time.''

It is not contended by appellant that the decedent's writing in of his name at the beginning of the instrument constituted his signature thereto. That it did not is expressly held in such cases as *Estate of Manchester,* 174 Cal. 417, 419 [163 P. 358, Ann.Cas. 1918B 227, L.R.A. 1917D 629], and *In re Walker,* 110 Cal. 387, 393 [42 P. 815, 52 Am.St.Rep. 104, 30 L.R.A. 460].

■ Nor is the intention of the testator to be given consideration for the purpose of determining whether a will has been executed in conformity with statutory provisions. (*Estate of Manchester, supra,* at p. 420; *Estate of Jordan,* 81 Cal.App. 2d 419, 422 [184 P.2d 165]; *Estate of Seaman,* 146 Cal. 455, 463 [80 P. 700, 106 Am.St.Rep. 53, 2 Ann.Cas 726], and concurring opinion of Beatty, C. J., at p. 465.)

Appellant cites no cases holding that the typewriting of the name of a testator at the end of a will satisfies the provision that it must be subscribed at the end thereof by the testator himself. In Webster's New International Dictionary, second edition, the word ''subscribe'' is defined as: ''1. To write underneath, as one's name; to sign (one's name) to a document. 2. To sign with one's own hand; to give consent to, as something written, or to bind oneself to the terms of, by writing one's name beneath; as, to *subscribe* a bond.''

Section 17 of the Code of Civil Procedure provides that ''signature or subscription includes mark, when the person cannot write, his name being written near it by a person who writes his own name as a witness; . . . . '' (Also see Civ. Code, § 14.)

The exception above recognized, that one who cannot write may make his mark, implies that a subscription must be hand written, if the subscriber can write; otherwise he may make his mark. But whoever witnesses the mark must himself write the name of the maker of the mark, as well as his own name as witness. No other exception is provided.

It is generally held that statutes relating to the execution of wills must be strictly followed. In *Estate of Seaman, supra,* at page 463, it is said that a failure to comply with the formalities required by a statute enacted for the prevention of fraud is not excused by showing that in the particular case under consideration there was no fraud.

Appellant relies upon such cases as *Weiner* v. *Mullaney,* 59 Cal.App.2d 620, 634 [140 P.2d 704], *Estate of Walker, supra,*

*Kadota Fig Association* v. *Case-Swayne Co.*, 73 Cal.App.2d 815 [167 P.2d 523], but they are distinguishable. *Weiner* v. *Mullaney* did not involve a will, but only letters, the writing of which by the person who signed them being admitted. In *Estate of Walker* a will was held invalid because one of the attesting witnesses inadvertently signed the surname of the testator instead of his own. The language relied upon by appellant is dictum. In the Kadota Fig case no will was involved; the signature involved was that of the judge who, it was shown, acted as authorized agent of the bonding company in signing a bond.

While in some cases it has been said that an instrument is deemed signed although the signature is typed, lithographed, rubber-stamped, printed or photographed, even assuming that such a signature might, under some circumstances, be held sufficient to render an instrument enforceable, we think that in the case of a will the statute requires a handwritten signature, or, at the very least, that if typewritten it must be shown that the name of the testator was typed by the testator himself or by some one person in his presence and by his direction who then subscribed his name thereto. To hold that the mere typed name of a testator is sufficient to satisfy the requirements of section 50 of the Probate Code would open the door to an easy form of fraud, when the purported signer was dead. We are in accord with the statement of Mr. Justice Beatty, in *Estate of Seaman*, *supra*, when he said, page 465:

"He [appellant] insists that section 1276 of the Civil Code [now Prob. Code, § 50], like the rest of its provisions must be liberally construed 'with a view to effect its objects and promote justice.' (Civ. Code, § 4.) I fully agree with him on this proposition, but I apply it differently. His argument is in effect that we should give a liberal construction to wills which deviate from the statute in the mode of their execution for the purpose of sustaining them, whereas a proper application of the principle requires us to give a liberal construction and full effect to every provision of the statute designed to prevent the probate of spurious wills, although in so doing we may in a particular instance defeat an honest attempt on the part of a decedent to make a testamentary disposition of his estate. The evil of occasionally defeating such an attempt is far less serious than the establishment of a precedent which would open the door to the frauds which the statute was designed to prevent. Every statute of frauds is

designed to promote justice by requiring wills and contracts to be executed with such formalities and *indicia* of genuineness as to make simulated and fraudulent writings of the classes defined impossible, or at least very difficult. Such statutes in the long run promote justice—which is their sole object—by shutting out opportunities of fraud. Where they defeat one honest purpose they prevent unnumbered frauds, which in their absence would be feasible and measurably safe. It would not, therefore, be a proper application of the principle invoked to weaken by construction the requirements of our statute prescribing the requisites of a valid will. By so doing we should no doubt be dealing most liberally with the efforts of decedents who have disregarded the law, but we should not be construing the law liberally to effect its objects. And unless we are to set ourselves up as better judges of the true policy of the law than the legislature, we should not be promoting justice.''

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 21, 1949. Carter, J., and Schauer, J., voted for a hearing.