[L. A. No. 22069. In Bank. Sept. 25, 1952.]

Estate of HELENE I. BLOCH, Deceased. SALLY GOLD-BERG, Respondent, v. JULIUS J. BLOCH, Appellant.

Frye & Yudelson and Collman E. Yudelson for Appellant.

Samuel D. Robbins for Respondent.

GIBSON, C. J.—This is an appeal from an order admitting to probate, as the will of Helene I. Bloch, a holographic instrument which was found after her death in a safety deposit box held by her and her sister as joint tenants. The document, which appeared on two sides of an envelope, was dated and was written entirely in decedent's own hand. The portions of the writing which were admitted to probate are as follows:*

"My executor shall be Sally Goldberg (sister) who shall employ counsel & pay expenses from estate to fight any action which may be taken by said husband Julius J Bloch
8/24/48
Bonds belonging solely to Helene I. Bloch ........ 8000$\frac{00}{}$
5300$^{00}$
$\overline{13300^{00}}$

---

*Language on the envelope by which decedent attempted to provide funds for care of her grave was denied probate, but the parties raise no question as to this part of the order.

In case of my death these are to be distributed to the following children for their education (divided equally)

Babette Freshman
Carolyn Freshman
Barbara Sue Freshman
Gary Lee Goldberg
Susan Linda Goldberg
Judy Brown
Stephen Brown

Julius J Bloch shall not receive a dower right or be allowed to contest my wishes in any court in the United States.
Julius J Block did not

over [end of first side of envelope]

prior
give me any part of these monies Same was saved (before) my marriage and invested likewise. During my marriage Julius J Bloch did not contribute to my support—I paid my own expenses throughout our marriage Therefore he is not to receive one cent of my estate. During our marriage Julius J Block, husband, was such only in name. When he had funds or made profits he squandered all on his selfish desires gambling—also throughout this marriage I continually aided financially his many adventures—all ending with losses Therefore I feel he does not participate.''

The writing stopped at the lower right-hand corner of the second side of the envelope, and there was insufficient room at that location for any further words of the same size and spacing as were employed elsewhere in the document. Some unused space was left above the writing on both sides of the envelope.

■ A holographic will must be entirely written, dated, and signed by the hand of the testator (Prob. Code, § 53), and it must be executed with testamentary intent. (*Estate of Golder*, 31 Cal.2d 848, 850 [193 P.2d 465].) The language of the document involved here is plainly dispositive in character, and the document was dated and was admittedly written by the hand of the decedent. The sole question is whether the decedent's name, which appears only in the body of the instrument, constitutes a signature within the meaning of the statute.

■ It is settled in California that the signature need not be located at the end but may appear in another part of the document, provided the testator wrote his name there with the intention of authenticating or executing the instrument

as his will. (*Estate of Kinney,* 16 Cal.2d 50, 53 [104 P.2d 782]; *Estate of McMahon,* 174 Cal. 423, 424 [163 P. 669, L.R.A. 1917D 778]; see *Estate of Manchester,* 174 Cal. 417, 421 [163 P. 358, Ann.Cas. 1918B 227, L.R.A. 1917D 629].) ▇ The required intention must appear on the face of the document itself, and parol evidence is not admissible to show that a signature found elsewhere than at the end is a signature of execution. (*Estate of Hurley,* 178 Cal. 713, 714-715 [174 P. 669]; see *Estate of Morgan,* 200 Cal. 400, 401-402 [253 P. 702]; *Estate of McMahon,* 174 Cal. 423, 424 [163 P. 669, L.R.A. 1917D 629]; *Estate of Manchester,* 174 Cal. 417, 421-422 [163 P. 358, Ann.Cas. 1918B 227, L.R.A. 1917D 629]; *Estate of Kinney,* 16 Cal.2d 50, 53 [104 P.2d 782].) The rule of evidence adopted in these cases has also been applied in determining whether a signature appearing in the body of a document is sufficient to satisfy the statute of frauds. (*Marks* v. *Walter G. McCarty Corp.,* 33 Cal.2d 814, 820-821 [205 P.2d 1025]; *McNear* v. *Petroleum Export Corp.,* 208 Cal. 162, 167-168 [280 P. 684] [citing probate cases].)

▇ It has been said that where a decedent's signature is found only in the body of a document which is claimed to be a will, the court must determine from an inspection of the instrument's language, form and the relative position of its parts whether or not there is a positive and satisfactory inference that the decedent's name was placed in that location with the intention of executing the instrument, and if such an inference appears, the execution is considered proven. (See *Estate of Kinney,* 16 Cal.2d 50, 53 [104 P.2d 782]; *Estate of Manchester,* 174 Cal. 417, 421 [163 P. 358, Ann.Cas. 1918B 227, L.R.A. 1917D 629].) ▇ Particularly important here are the principles set forth in the Kinney case where it was held that a holographic testamentary instrument may be admitted to probate, although the testator wrote his name only in the beginning, whenever it appears that the instrument is a completed declaration of the decedent's desires. (16 Cal.2d at pp. 54-56.) The court said (16 Cal.2d at pp. 55-56): "Completeness alone has been held sufficient evidence of the adoption of the name so placed as the authenticating signature of the testator and as a compliance with the statute which requires the will to be 'signed'. . . . From the earliest consideration of the question, completeness of the testamentary declaration has been deemed sufficient evidence of the 'signing' of the writing, even though the declarant's name was written by him at a place other than at the end." The court dis-

tinguished cases cited for the proposition that there must be some affirmative expression to the effect that the name was adopted as an executing signature, and it stated that those cases are not to be construed as holding that such an affirmative expression is required where the will appears to be a completed testamentary declaration. (16 Cal.2d at p. 54.) In this connection it was noted that the decedents involved in those cases did not appear to have "done everything they intended to do." (16 Cal.2d at p. 55.) The court, applying these principles, upheld a will which provided simply: "I Anna Leona Graves Kinney, do bequeath all my possessions to my four sisters who were living in 1923," giving the names and addresses of four persons.

Many other cases, some of which have cited and followed *Estate of Kinney,* indicate that the courts of this state have been very liberal in sustaining the validity of holographic wills which appear to be complete testamentary documents although signed elsewhere than at the end. (See *Estate of Brooks,* 214 Cal. 138, 140-141 [4 P.2d 148] ["This is my will—Elizabeth Ryan Brooks," after which are numerous specific bequests]; *Estate of Morgan,* 200 Cal. 400, 402 [253 P. 702]; *Estate of Wallace,* 100 Cal.App.2d 237, 239 [223 P.2d 284], ["I, James T. Wallace have the use of all Personal and Real Estate as long as I survive," after which were two short sentences disposing of the property]; *Estate of Gardener,* 84 Cal.App.2d 394, 396-397 [190 P.2d 629], ["I, Mrs. Estelle Gardener 433 West Laurel Street do give devise and bequeth Mrs. Dorothy Mathews and Mrs. Eleatra Hyatt" certain described property]; *Estate of Kaminski,* 45 Cal. App.2d 779, 781-782 [115 P.2d 21], ["Last will and testament of Belle Kaminski, Dec. 8-1937 . . . being of sound and disposing mind and memory . . . do make publish and declare this my last will & testament in the manner following, that is to say," followed by specific provisions disposing of property and concluding with a direction for cremation]; *Estate of Bauman,* 114 Cal.App. 551, 553 et seq. [300 P. 62], ["That I Lovina Bauman, on this date April 9th, 1929, desire my wishes herein executed as stated. . . ."]; *Estate of Sullivan,* 94 Cal.App. 674, 677 [271 P. 753], ["I, Mark Cornelius Sullivan . . . revoking all wills by me heretofore made, do hereby publish and declare this my Last Will and Testament . . . in manner and form following: . . ."]; *Estate of England,* 85 Cal.App. 486, 488 [259 P. 956], ["Last Will of Anna England," in caption, followed only by bequests].)

■ The instrument involved in the present case, as we have seen, discloses a testamentary intent, and, in our opinion, constitutes a complete testamentary document under the foregoing decisions. The writing, on its face, indicates that the testatrix did everything that she intended to do: She specified that the bonds which belonged solely to her were to be distributed equally among seven named individuals; she excluded her husband from sharing in this bequest, giving reasons for doing so; and she appointed her sister executrix and directed her to resist any action which might be taken by the husband. The document, after giving the reasons of the testatrix for exclusion of her husband, ends, in a natural manner, by stating: "Therefore I feel he does not participate."* The photostat of the instrument contained in the clerk's transcript shows that after the word "participate" there is a mark which, although not entirely clear, may well have been intended as a period. Even if no period was placed at the end, other portions of the writing disclose that the testatrix occasionally omitted punctuation marks after sentences and initials. (See *Estate of Brooks,* 214 Cal. 138, 140 [4 P.2d 148], sustaining will with neither period nor signature at end.) The fact that the testatrix used her name in one part of the document for a dual purpose, that is, to describe the property covered by the bequest as well as to authenticate the will, is immaterial.

Unlike the writings involved in the cases relied upon by appellant, there is nothing in the document before us to suggest that it was incomplete in the sense that the testatrix may have intended to set forth any additional matter but failed to do so. For example, the instrument considered in *Estate of Manchester,* 174 Cal. 417 [163 P. 358, Ann.Cas. 1918B 227, L.R.A. 1917D 629], ended: "Whereunto I hereby set my hand this fourteenth day of January, 1914," and the court stated that these are apt words to precede a signature in attestation of a will and tend to show that the decedent intended to sign immediately below but did not carry out that intent. (174 Cal. at p. 419.) In *Estate of*

---

*The parties, in their briefs, disagree as to whether the last word is "participate" or an abbreviation thereof or something else. The dispute is apparently due to the fact that the briefs contain photostats which are not as clear as the one in the clerk's transcript, which plainly shows each letter of the word. It is possible that the testatrix inserted the provision relating to her "executor" after she had written the above quoted sentence, but this does not seem to be material since each provision is complete by itself.

*Bernard,* 197 Cal. 36, 40-41 [239 P. 404], the court held that the abrupt termination of the instrument near the middle of the last page manifested that the writer did not intend to stop at that point but, rather, that something additional was to be done, and that this compelled the conclusion that the decedent had no intention of adópting the name written in the opening clause as the executing signature of a will. (See, also, *Estate of Leonard,* 1 Cal.2d 8, 9 et seq. [32 P.2d 603]; *Estate of Devlin,* 198 Cal. 721, 726 [247 P. 577]; *Estate of Hurley,* 178 Cal. 713, 715 [174 P. 669].)

Since it appears that the holographic document written by Mrs. Bloch is a complete testamentary instrument, it follows, under the decision in *Estate of Kinney, supra,* 16 Cal. 2d 50, 56, that her name is to be regarded as having been written in the body of the instrument with authenticating intent.

The order is affirmed.

Shenk, J., Carter, J., Schauer, J., and Spence, J., concurred.

TRAYNOR, J.—I dissent.

In my opinion the decedent did not comply with the requirement of section 53 of the Probate Code that a holographic will must be "signed by the hand of the testator himself." Although this section does not require the signature to be affixed at the end of the instrument offered for probate (compare § 50(1)), it does require the name of the decedent, wherever placed, to be written with the intention of executing the instrument as a will. (*Estate of Manchester,* 174 Cal. 417, 421 [163 P. 358, Ann.Cas. 1918B 227, L.R.A. 1917D 629]; see cases collected in 19 A.L.R.2d 926.)

Regardless of where the name may appear in the instrument, there is always the possibility, of course, that it was intended as a signature. The mere existence of that possibility, however, is not enough to permit a reasonable inference that it was so intended. When the name is used to identify the decedent as the author of the alleged will as in *Estate of Kinney,* 16 Cal.2d 50 [104 P.2d 782] ("I Anna Leona Graves Kinney, do bequeath all my possessions to my four sisters"), or to identify the instrument as decedent's will as in *Estate of Brooks,* 214 Cal. 138 [4 P.2d 148] ("This is my will—Elizabeth Ryan Brooks"), and in addition the instrument appears to be a complete testamentary document, it may reasonably be inferred that the name was placed where

it was with the intention of executing the instrument. In such cases the name is linked to the alleged testamentary act and the probabilities that it was intended as a signature are strong. In the present case, on the contrary, decedent's name appears only in the description of her property. It is not part of the description of the instrument itself or of the purpose for which it was written. The holding that under such circumstances the mere fact that the alleged will appears to be a complete testamentary instrument is evidence that it was signed, confuses the question whether it was intended as a will with the question whether the name appearing thereon was intended as a signature. As this court pointed out in *Marks* v. *Walter G. McCarty Corp.*, 33 Cal. 2d 814, 820 [205 P.2d 1025], quoting Chief Judge Cardozo in *Mesibov, Glinert & Levy* v. *Cohen Bros. Mfg. Co.*, 245 N.Y. 305, 311-312 [157 N.E. 148], " 'We may, indeed, infer from the delivery of the writing that the defendant intended to assume the obligation of a contract, whether the document was signed or unsigned. It might have intended as much if there had been no writing whatever. It may even have supposed that a writing was unnecessary. Something more must be found before the statutory requirements can be held to be obeyed. The defendant must have intended not merely to contract, but to sign. We see no mark of such purpose.' " No inference was drawn in the Marks case that defendant's name was intended as a signature from the fact that it appeared at the head of a complete instrument. Similarly, in this case the words "Bonds belonging solely to Helene B. Bloch" provide no evidence that decedent placed her name in the body of the instrument with the intent that it operate as an executing signature, and, accordingly, it is immaterial that the instrument may otherwise appear to be a complete testamentary act.

"[T]he right to make testamentary disposition of property is not an inherent right or a right of citizenship, nor is it even a right granted by the constitution. It rests wholly upon the legislative will, and is derived entirely from the statutes. In conferring that right the legislature has seen fit to prescribe certain exactions and requirements looking to the execution and authentication of the instrument, and a compliance with these requirements becomes necessary to its exercise." (*In re Walker,* 110 Cal. 387, 390 [42 P. 815, 52 Am.St.Rep. 104, 30 L.R.A. 460].) It is the duty of a

court to deny probate to any instrument that does not meet the requirements set by the Legislature, regardless of sympathy for the wishes of a decedent that may be thwarted by adherence to the statute of wills. (*Estate of Seaman,* 146 Cal. 455, 463, 466 [80 P. 700, 106 Am.St.Rep. 53, 2 Ann. Cas. 726]; *Estate of Moore,* 92 Cal.App.2d 120, 122 [206 P.2d 413].)

I would reverse the order admitting the instrument to probate.

Edmonds, J., concurred.