[No. D006798. Fourth Dist., Div. One. Dec. 23, 1988.]

Estate of MARGARET HORWITZ MACLEOD, Deceased.
DOROTHY DAVIS et al., Petitioners and Respondents, v.
DAVID ALBERT HORWITZ, Contestant and Appellant.

**COUNSEL**

Raymond G. Kolts, Lester, Pitzer & Davis, Charles P. Lester, Morris, Polich & Purdy and Robert S. Wolfe for Contestant and Appellant.

Wagner & Scuderi and Jerome M. Wagner for Petitioners and Respondents.

## Opinion

**BENKE, J.**—This is an appeal from an order submitting to probate a holographic instrument found by the trial court to be the will of Margaret Horwitz MacLeod (Margaret). (See appen. A for a photocopy of the will attached to this opinion.) The will was contested by Margaret's stepson David Horwitz (David) on the basis (1) it was not signed with the intent to authenticate the document as a will, (2) it was executed without testamentary intent and (3) it was not dated as required by the law applicable to the document. The trial court rejected these claims and admitted the will to probate.

### I

### FACTS

Margaret was married to the senior David Horwitz (Horwitz) in 1956. Margaret had no children; Horwitz had one son, David. Their marriage produced no offspring. Horwitz died in 1959, leaving two-thirds of his estate to Margaret and one-third to David. Margaret did not remarry. She purchased a small farm in New Brunswick, Canada and moved to the farm in the late 1960's. In 1976 Margaret suffered a stroke and was placed by relatives in a convalescent home in Carlsbad, California. Conservatorship proceedings were instituted in both Canada and California. Margaret's Canadian property was sold at a later date and the funds from the sale were deposited into Margaret's California conservatorship. Margaret died in the convalescent home on January 31, 1984.

A petition was filed for letters of administration. Later an amended petition was filed, seeking in the alternative either letters of administration or letters testamentary. Attached to the petition was a holographic document in Margaret's handwriting. The petition took no position on whether the document was a will. Since the possibility existed it was, however, it was included in the petition for the review of interested parties.

After Margaret's stroke, the document was found in her bedside table at the New Brunswick farm by the wife of one of Margaret's nephews. The document consists of four pages of writing paper, folded together. Three of the pages contain Margaret's handwriting and the fourth page is blank.

The document is not dated. It is written in several colors of ink and contains interlineations, corrections and writing in the margins. The writing begins at the top of the first page with the words "Being of sound mind I, Margaret Macleod Horwitz, declare the following to be my last will and

testament." The name "Margaret MacLeod Horwitz" is a superscription added to the sentence by means of a caret mark. On the next three pages are numbered bequests. The first is to David and leaves to him "the enclosed pictured articles which had belonged to his father and/or mother." No pictures were found with the document. In the margin following are the words "Also I bequeath him the large Sarouk rug he so admired."

The second bequest is to David's wife. The document leaves to her a diamond watch with diamond band. Interlineated from this bequest is "the gold and diamond pin" which had belonged to her husband's mother. The third bequest was to David's daughter and gave to her a silver dresser set and various items of jewelry. Also included was the gold and diamond pin interlineated from the bequest to David's wife.

The next seven numbered bequests leave items of jewelry to various friends and relatives.

The 11th numbered bequest states: "To my dear nephew, Sidney Macleod Smith I leave MacTavish Farm, all its buildings and furnishings, paintings, books silver and bibelots, in memory of, and gratitude for all his help, kindnesses and devotion to my father and mother over the years. It is my hope that the property will remain in the family in perpetuity"

The 12th and last bequest states "All the remainder of my estate, after taxes is to be equally divided between my five other beloved nephews." The document then lists the names of Margaret's five other nephews.

No signature appears at the end of the document.

Margaret's estate was valued at slightly over $1 million.

A will contest was undertaken by David. The parties agreed the document in question was entirely in Margaret's handwriting; Margaret had testamentary capacity at the time the document was executed. The parties also agreed that at the time of Margaret's death the California Probate Code did not require a holographic will be dated.

David presented essentially uncontradicted evidence that Margaret was a well-educated, formal and punctilious woman who had been the executor of her husband's formal will. David also presented legal documents signed by Margaret to demonstrate she used a particular signature in signing such documents. David requested the trial court compare that signature to the signature on the purported will. Evidence was also presented Margaret was close to David and that almost all of her estate was from David's father. It

was David's position that given Margaret's character she would not have intended the unsubscribed, scribbled and interlineated document found at her bedside to be her will. David believed the document was no more than an unsigned working paper executed without testamentary intent.

David further argued while the law at the time of Margaret's death did not require a date, that rule should not be applied to the subject document because Margaret lost testamentary capacity seven years before the Legislature changed the rule and it would be unfair to retroactively apply the new rule.

The trial court stated it was important, if at all possible, to give effect to Margaret's wishes. The court noted there was no question the document was in Margaret's handwriting and that her signature appeared on it. The court concluded the document was a complete disposition of her property and that Margaret was not the type of person who would have chosen to die intestate. The court noted the document began with the statement it was Margaret's last will and testament. The court believed Margaret might have changed the will from time to time after it was first drafted but did not believe that fact was significant. The court admitted the will to probate.

## II

### DISCUSSION

#### A. *Testamentary Intent*

 Essentially David makes two closely related arguments. First, a review of the document and evidence concerning Margaret's character and habits lead to the conclusion the document was not executed with testamentary intent. Second, whatever the intent in drafting the document, it is invalid as a holographic will since it was not signed with the intent to authenticate the document as a will.

We deal first with the question of testamentary intent. As was stated in *Estate of Geffene* (1969) 1 Cal.App.3d 506, 512 [81 Cal.Rptr. 833]: "Before an instrument may be admitted to probate as a will, it must appear from its terms, viewed in the light of the surrounding circumstances, that it was executed with testamentary intent. [Citations.] The basic test of testamentary intent is not the testator's realization that he was making a will, but whether he intended by the particular instrument offered for probate to create a revocable disposition of his property to take effect only upon his death. [Citations.] No particular words are necessary to show testamentary intent but it must satisfactorily appear from the proffered document that the

decedent intended by the very paper itself to make a disposition of his property after his death. [Citations.]"

■ Regardless of the language of the instrument, extrinsic evidence may be introduced to show it was not intended by the testator to be effective as a will. (*Estate of Sargavak* (1950) 35 Cal.2d 93, 95-96 [216 P.2d 850, 21 A.L.R.2d 307].)

When the trial court's interpretation of a written instrument turns upon the credibility of conflicting evidence, we are bound by the conclusion reached below. However, this is not the case when no extrinsic evidence was presented or if the evidence acted upon below was not in conflict. (*Estate of Geffene, supra,* 1 Cal.App.3d at pp. 511-512.) In the present case while extrinsic evidence was presented, that evidence was not in conflict and the task of the trial court was to interpret the meaning of the evidence in light of the document offered as Margaret's will. Under such circumstances our task is to independently decide whether the document offered as Margaret's will was executed with testamentary intent. (*Ibid.*)

■ We first note the document on its face is described as a will. The instrument is reasonable, noneccentric and complete. Margaret begins the document with specific bequests of personal property and gives her beloved farm to a family member with the notation she hopes the property stays in the family. The document ends with a residuary clause that acts to completely distribute her property.

While the document may not reflect Margaret's usual care with important legal documents, and while it may have been changed from time to time, even with the intent perhaps at some future time to formalize the will, we do not believe this detracts from the conclusion Margaret intended the document, at any given time, to be her will. (See *Estate of Crick* (1964) 230 Cal.App.2d 513, 517 [41 Cal.Rptr. 120]; *Estate of Kuttler* (1958) 160 Cal.App.2d 332, 342 [325 P.2d 624].)

■ Next we deal with the argument the will was not signed. At the time of Margaret's death, the validity of a holographic will was controlled by Probate Code section 53. The section stated, in pertinent part, a will which did not comply with the technical requirements of Probate Code section 50, and whether or not witnessed, was valid if the signature and material provisions of the will are in the handwriting of the testator. (§ 53 was repealed by Stats. 1983, ch. 842, but pursuant to Prob. Code, § 6103, continues to apply to estates of decedents who died before Jan. 1, 1985.)

■ The general rules for determining the validity of a holographic will where the signature of the testator appears other than at the end of the

document are clearly stated in *Estate of Bloch* (1952) 39 Cal.2d 570, 572-573 [248 P.2d 21]: "It is settled in California that the signature need not be located at the end but may appear in another part of the document, provided the testator wrote his name there with the intention of authenticating or executing the instrument as his will. [Citations.] The required intention must appear on the face of the document itself, and parol evidence is not admissible to show that a signature found elsewhere than at the end is a signature of execution. [Citations.] . . .

"It has been said that where a decedent's signature is found only in the body of the document which is claimed to be a will, the court must determine from an inspection of the instrument's language, form and the relative position of its parts whether or not there is positive and satisfactory inference that the decedent's name was placed in that location with the intention of executing the instrument, and if such an inference appears, the execution is considered proven. [Citations.] Particularly important here are the principles set forth in the *Kinney* case [*Estate of Kinney* (1940) 16 Cal.2d 50, 54-56] where it was held that a holographic testamentary instrument may be admitted to probate, although the testator wrote his name only in the beginning, whenever it appears that the instrument is a completed declaration of the decedent's desires. (16 Cal.2d at pp. 54-56.) The court said (16 Cal.2d 55-56): 'Completeness alone has been held sufficient evidence of the adoption of the name so placed as the authenticating signature of the testator and as a compliance with the statute which requires the will to be "signed". . . . From the earliest consideration of the question, completeness of the testamentary declaration has been deemed sufficient evidence of the "signing" of the writing, even though the declarant's name was written by him at a place other than at the end.' "

The court in *Bloch* reviewed the applicable case authority and stated: "Many other cases, some of which have cited and followed *Estate of Kinney,* indicate that the courts of this state have been very liberal in sustaining the validity of holographic wills which appear to be complete testamentary documents although signed elsewhere than at the end. [Citations.]" (39 Cal.2d at p. 574; see also *Estate of Black* (1982) 30 Cal.3d 880, 883-884, 888 [181 Cal.Rptr. 222, 641 P.2d 754].

Before addressing this question, we must define the role of a reviewing court in dealing with such issues. In *Estate of Kinney* (1940) 16 Cal.2d 50, 54 [104 P.2d 782], the California Supreme Court stated: "It is for the probate court in the first instance to say whether the document was 'signed' by the decedent, and its determination will not be disturbed unless it is without support in the evidence." (See also *Estate of Rowe* (1964) 230 Cal.App.2d 442, 445 [41 Cal.Rptr. 52]; *Estate of Gardener* (1948) 84

Cal.App.2d 394, 396 [190 P.2d 629].) While no later case has directly overruled *Kinney,* we believe our role is not as defined by that case.

In *Estate of Helmar* (1973) 33 Cal.App.3d 109, 112 [109 Cal.Rptr. 6] (disapproved on other grounds, *Estate of Black* (1982) 30 Cal.3d 880, 887 [181 Cal.Rptr. 222, 641 P.2d 754]), a case dealing with the statutory requirement that a holographic will be entirely in the handwriting of the testator, the court stated: "Since the material findings of the trial court pertaining to the validity of the document as a will were not based upon conflicting evidence or a determination of credibility of witnesses but rather upon inferences drawn from the document itself, we must on appeal make an independent review of the issue as a matter of law. [Citations.]"

As was stated in *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839], it is "a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." This rule has been specifically applied by the California Supreme Court to the interpretation of wills. (*Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385]; *Estate of Russell* (1968) 69 Cal.2d 200, 212 [70 Cal.Rptr. 561, 444 P.2d 353]; see also *Estate of Hilton* (1988) 199 Cal.App.3d 1145, 1168-1170 [245 Cal.Rptr. 491]; *Poag* v. *Winston* (1987) 195 Cal.App.3d 1161, 1173 [241 Cal.Rptr. 330].) In light of *Parsons, Dodge* and *Helmar,* we conclude the statement in *Kinney* that in deciding whether a will has been signed we should defer to the determination of the probate court is no longer the law. When, as here, the issue turns merely on interpretation, we independently determine whether the will was signed.

While not the most presentable of documents, and while not dated or subscribed, the instrument here did contain a statement by Margaret that it was her will. Margaret signed it, albeit at the beginning, and the document can reasonably be interpreted as a complete device for the disposition of her property. Margaret in the first three bequests distributes to David, his wife and daughter items of personalty that were from the Horwitz family. In the next several bequests she distributes to friends and relatives other personal items. In the 11th bequest she gives to her nephew Sidney MacLeod Smith the farm in New Brunswick. She clearly had strong personal feelings for the farm and hoped it would remain in her family. Finally, the will concludes with a clause dealing with the residue of her estate. The clause simply divided the remainder of her property, presumably those items of property that had value but not personal meaning, to her "other beloved nephews." She then named the nephews. We believe this sufficiently demonstrates the will was signed with the intent to authenticate the document as a will.

## B. *Absence of a Date*

■ David argues Margaret's will was not dated and under the law applicable to it was a nullity. The parties agree Margaret's holographic will was written before her stroke in 1976. In 1976 Probate Code section 53 required holographic wills be dated. Margaret's will was not dated and, thus, at the time of its drafting was invalid. However, in 1982 section 53 was amended to require holographic wills be dated only in circumstances not applicable to this case. (Stats. 1982, ch. 187, § 3, p. 570 [repealed by Stats. 1983, ch. 842, but, pursuant to existing § 6103, continues to apply to estates of decedents who died before Jan. 1, 1985].)

David recognizes the rule that a will speaks from the date of death of the testator and is construed as operating according to the law then in force. (*Estate of Brace* (1960) 180 Cal.App.2d 797, 799 [4 Cal.Rptr. 683]; *Estate of Davison* (1950) 96 Cal.App.2d 263, 267-268 [215 P.2d 504]; 64 Cal.Jur.3d, Wills, § 2, pp. 24-25, § 326, pp. 600-602.) He argues, however, the rule should not be applied to the facts of this case.

David notes Margaret's holographic will was drafted, and she lost her testamentary capacity, while Probate Code section 53 still required holographic wills be dated. David contends the rule that wills speak from the time of the death of the testator and that the law then in effect controls the validity of the will is based on the ambulatory nature of wills. This he argues is because the will may be changed at anytime until death. Since in the present case the legal fiction of the testator's capacity to amend her will to conform to statutory changes ended in 1976, the validity of the will should be tested by the law then in effect. If this were done it would be necessary to declare the will invalid.

We disagree. It has been noted that "In most cases statutes dispensing with formalities previously required in the execution of wills have, upon one ground or another, been applied retrospectively, where the effect has been to validate the previously executed will of testators who were alive when the statutes were adopted." (79 Am.Jur.2d, Wills, § 196, pp. 418-419.) (See, e.g., *Estate of Learned* (1886) 70 Cal. 140, 143 [11 P. 587].) We believe, in the final analysis, this practice is not based on arcane rules relating to the ambulatory nature of wills but rather to the strong policy of the law to uphold, when possible, the validity of wills. (*Estate of Black, supra,* 30 Cal.3d at pp. 883-884.)

In this case the trial court found the holographic will had been signed by Margaret with testamentary intent. The parties agree at the time the will was executed Margaret had testamentary capacity. It would be unreason-

able, we think, to declare her will invalid, based on the lack of a formality the law now finds unnecessary. Under the facts of this case we believe the lack of a date on the holographic is not fatal to its validity.

The order is affirmed.

Kremer, P. J., and Wiener, J., concurred.

1246

ATTACHMENT 3e

Margaret MacNeil Horwitz

Being of sound mind I, declare the following to be my last will and testament:-

1. To my (step)son, David Albert Horwitz, I leave the enclosed pictured articles which had belonged to his father and/or mother. Also I to give him the large break ring of mine

2. To my daughter (in law) Hazel Brewell Horwitz, I bequeath the my diamond watch with diamond band attached.

3. To my step granddaughter Jody Horwitz I bequeath the silver dresser set which was her grandmother's, and my jade jewelry (pendant, ring, earrings and bracelet) part of which had belonged to her father's mother, also the gold + diamond pin which was my grandmother's

4. To my sister, Dorothy Davis, I leave my opal ring (that stone being her birthstone), the painted china pin which was our mother's, and all my silver jewelry

5. To my sister Janet Reynolds, I bequeath my topaz and diamond ring and all my antique diamond pendant

6. To my friend, Mona McWilliam of Newcastle N.B. Canada, I leave my pearl ring and antique black + pearl pin.

APPENDIX A

7. To my grand-niece Susan Lee Smith I bequeath my modern gold necklace & matching earrings

8. To my grandniece Beverly Lyn Smith I leave my grandmother's watch chain (now a necklace) and heart-shaped charm.

9. To my friend, Faith Frikart I leave my wrist-watch with diamonds encircling the face and larger ones at either end, –

10. To my niece Lee Smith I bequeath both gold charm bracelets –

11. To my dear nephew, Sidney MacLeod Smith I leave MacTavish Farm, all the buildings and furnishings, paintings, books silver and bibelots in memory of and gratitude for all his help, kindnesses and devotion to my father and mother over the years. It is my hope that the property will remain in the family in perpetuity –

12. All the remainder of my estate, taxes is to be equally divided between my five other nephews.

Col. John Lynch Davis III
William ~~Henry~~ Kelsey, Jr.
~~Robert~~ Charles Huff Davis
Robert
Thomas MacLeod Reynolds